UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>SUNSETTER PRODUCTS LP,<br> a Massachusetts Limited Partnership,<br><br>      Defendant. | No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR CIVIL PENALTIES
AND PERMANENT INJUNCTIVE RELIEF**

**INTRODUCTION**

1. The Consumer Product Safety Act ("CPSA") requires manufacturers, distributors and retailers to notify the Consumer Product Safety Commission ("CPSC") when they become aware of information that reasonably supports the conclusion that a product may contain a defect which could create a substantial product hazard or create an unreasonable risk of serious injury or death. The purpose of this requirement is to bring potentially dangerous consumer products to the attention of the CPSC in a timely fashion, so that it may act swiftly to protect consumers. Congress imposed the notification requirement upon manufacturers, distributors and retailers because they often are in the best position to receive information about defects and hazards in the products they sell.

2. Defendant SunSetter Products LP ("SunSetter") manufactures motorized, retractable awnings for outdoor use. With its awnings, SunSetter sold or gave away as a promotion a protective, vinyl cover with bungee tie-downs ("the Cover"). The Cover protects

the awning from the elements when the awning is fully retracted.  SunSetter directed the consumer to secure the Cover using the bungee tie-downs that SunSetter provided with the Cover.  Because awnings are located above human height, the consumer generally stands on a ladder or stool to affix or remove the Cover.

3. A consumer retracts and opens the awnings that SunSetter manufactures by using a separate, remote-control device.  If a consumer—or someone else—has inadvertently activated a retracted awning while the Cover is secured over it, and the consumer then removes the bungee tie-downs from the Cover, the awning can open suddenly and unexpectedly.  The force of the stored energy from such a sudden, unexpected opening is sufficient to knock over anyone standing in the awning's path, particularly while on a ladder or stool, and put him or her at risk of serious injury or death.

4. SunSetter was aware of this defect and hazard as early as March 2012, when a consumer notified SunSetter that his awning sprang open when he removed the Cover.

5. In May 2013, SunSetter received a report of a consumer who sustained serious injuries after being knocked off a ladder by the sudden, unexpected, and forceful opening of one of SunSetter's awnings after the consumer removed the Cover.

6. In September 2017, SunSetter learned of the death of a consumer who was knocked off a ladder and over a balcony as he removed the bungee tie-downs and Cover from a retracted awning that had previously been activated.

7. SunSetter finally reported the defect and hazard to the CPSC in October 2017.  SunSetter thus had information *for years* that reasonably supported the conclusion that the Cover contained a defect which could create a substantial product hazard and created an unreasonable

risk of serious injury or death but did not report this information to the CPSC until after the death of a consumer.

8.     Plaintiff, United States of America, on behalf of the CPSC, brings this action under the CPSA, 15 U.S.C. §§ 2051-89.  The United States seeks civil penalties from SunSetter because SunSetter knowingly failed to immediately report to the CPSC information that reasonably supported the conclusion that the Cover contained a defect that could create a substantial product hazard and created an unreasonable risk of serious injury or death.  The United States also seeks injunctive relief to prevent SunSetter from violating the requirement to report any such defects or unreasonable risks of serious injury or death.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a) and 15 U.S.C. § 2071(a).

10.    Venue in the District of Massachusetts is proper under 28 U.S.C. §§ 1391(b), (c) and 1395(a).

## DEFENDANT

11.    SunSetter is a limited partnership located in Malden, Massachusetts, existing under the laws of the Commonwealth of Massachusetts.  Until 2016, SunSetter was owned by JIL Industries, Inc., as the sole general partner, and two founders of the company as limited partners.  On January 6, 2016, Springs Window Fashions LLC and its wholly owned subsidiary SWF Sky Holdings LLC acquired SunSetter.

12.    Since at least 1999, SunSetter has conducted business in the District of Massachusetts, related to the manufacture, distribution and sale of the Covers.

13. At all times relevant hereto, SunSetter was a "manufacturer" of the Covers, as defined in 15 U.S.C. § 2052(a)(11).

14. At all times relevant hereto, SunSetter was also a "retailer" of the Covers, as defined in 15 U.S.C. § 2052(a)(13).

15. SunSetter manufactured and sold the Covers, along with the motorized retractable awnings: (a) to consumers for use in or around a permanent or temporary household or residence, in recreation, or otherwise; and (b) for the personal use, consumption or enjoyment of consumers in or around a permanent or temporary household or residence, in recreation, or otherwise.

16. Each "Cover" is a "consumer product" as that term is defined in 15 U.S.C. § 2052(a)(5).

17. SunSetter initially reported the "subject products" to the CPSC as "motorized SunSetter® Retractable Awnings with optional soft vinyl protective awning covers installed (together, the 'Subject Products')," and later as the "soft vinyl awning covers supplied with bungee fasteners" or "Covers." Regardless of how SunSetter defines the consumer product in this action, however, SunSetter failed to inform the CPSC immediately after obtaining information that reasonably supported the conclusion that the consumer product contained a defect that could create a substantial product hazard and created an unreasonable risk of serious injury or death.

## CONSUMER PRODUCT SAFETY COMMISSION

18. The CPSC is an independent federal agency, established by Congress, that protects the public against unreasonable risks of injury from consumer products. 15 U.S.C. § 2051(b)(1). The CPSC is located at 4330 East West Highway, Bethesda, Maryland, 20814. 16 C.F.R. § 1000.4.

19. Under the CPSA, every manufacturer, distributor and retailer of a consumer product distributed in commerce is required to "immediately inform the [CPSC]" of certain information. 15 U.S.C. § 2064(b).

20. Under the CPSA, every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product "who obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard . . . shall immediately inform the Commission . . . of such defect" unless such manufacturer, distributor, or retailer "has actual knowledge that the Commission has been adequately informed of such defect . . . ." 15 U.S.C. § 2064(b)(3). Congress defines "substantial product hazard" at 15 U.S.C. § 2064(a)(2) to include a product defect that "creates a substantial risk of injury to the public."

21. The CPSA also requires that every manufacturer, distributor or retailer of a consumer product distributed in commerce "who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the Commission of such . . . risk" unless the manufacturer, distributor or retailer "has actual knowledge that the Commission has been adequately informed . . . of such risk." 15 U.S.C. § 2064(b)(4).

22. The CPSC has defined "serious injury or death" to include any significant injury, including injuries necessitating medical or surgical treatment and lacerations requiring sutures. 16 C.F.R. § 1115.6(c).

23. Under the CPSC's regulations defining the time to report, "immediately" means "within 24 hours" after a firm has obtained the requisite information regarding a defect or

5

unreasonable risk, 16 C.F.R. § 1115.14(e), and a firm should not wait for serious injury or death to occur before reporting, 16 C.F.R. § 1115.6(a).

24. The failure to furnish information required by 15 U.S.C. § 2064(b) is a prohibited act under the CPSA.  15 U.S.C. § 2068(a)(4).

25. Any person who knowingly violates 15 U.S.C. § 2068 is subject to civil penalties. 15 U.S.C. § 2069(a)(1).  The CPSA defines "knowingly" as "(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations."  15 U.S.C. § 2069(d).

26. The CPSA's reporting requirements for consumer product manufacturers, distributors and retailers protect the public health and safety.  The sooner the CPSC knows of a potential problem, the sooner it can investigate and take necessary action, including remedial action to remove the product from commerce and providing a remedy for consumers.

## FACTS

*The Covers*

27. During the period starting June 1999, and ending January 2019, SunSetter manufactured approximately 270,000 Covers in the United States.

28. During the period starting June 1999, and ending January 2019, SunSetter also distributed and sold approximately 270,000 Covers directly to consumers and to retailers throughout the United States.

29. The Cover is a vinyl protective covering that the consumer places over SunSetter's "Motorized," "Motorized XL," and "Oasis" retractable awnings to protect the awnings from the elements when not in use.  SunSetter supplied bungee tie-downs for the consumer to secure the Cover.  SunSetter sells the awnings with a remote control.

*SunSetter's Knowledge of the Defective and Hazardous Covers*

30. In or around March 2012, a consumer notified SunSetter that while he was removing the Cover from his awning, it opened suddenly and knocked him from a ladder. SunSetter provided the report to its senior management. Also in 2012, SunSetter received at least two other reports of its awnings unexpectedly and suddenly opening after a consumer removed the Cover.

31. In or around February 2013, SunSetter's customer care employees advised a consumer who reported that her awning "sprung open" that she should roll up the awning manually—rather than by using the remote—and to unplug the awning before removing the bungee tie-downs securing the Cover.

32. In or around May 2013, SunSetter learned of another sudden, unexpected awning opening. Later that month SunSetter received a report that another consumer suffered a broken arm and leg and required stitches after one of SunSetter's awnings opened suddenly and forcefully, knocking the consumer off of a ladder, when he removed the Cover. SunSetter's senior management was aware of the report.

33. In or around July 2014, a consumer reported that another of SunSetter's awnings had opened unexpectedly but did not report any resulting injuries.

34. In or around July 2015, a consumer reported to SunSetter that while removing the bungee tie-downs from the Cover, one of SunSetter's awnings had sprung open and pushed her against a balcony. The consumer went to the emergency room to be evaluated for a possible concussion.

35. In or around August 2015, SunSetter performed simulation testing to recreate the incident it learned of in July 2015. SunSetter determined that the motorized awnings can

unexpectedly extend when a consumer removes the Cover and this could injure a consumer when: the awning is closed and encased with a Cover; the awning is plugged into an electrical outlet; the remote control is activated; the secured Cover prevents the awning from opening; the awning fabric unwinds under the Cover; and the bungee tie-downs securing the Cover are removed.

36. In or around August 2015, SunSetter updated the installation and use instructions for the Covers and sent the updated instructions to approximately 305,000 existing consumers. In the updated instructions, SunSetter stated: "WARNING:  Do not place the ladder or stand in front of the Oasis awning front bars.  Doing so could result in personal injury."

37. In or around August and September 2015, SunSetter initiated an unannounced recall, by mailing a Safety Notice to its dealers and customers that acknowledged the hazard and danger to consumers.  In the Safety Notice, SunSetter stated: "We recently became aware of a potential safety issue when removing the soft vinyl Protective Awning Cover from your Motorized Awning."  In the notice, SunSetter provided detailed instructions for the removal of the Cover and warned consumers not to place a ladder or stand in front of the awning when they remove the Cover.  SunSetter did not notify the CPSC after sending this notice to dealers and customers.

38. In or around September 2015, a consumer reported to SunSetter that someone was injured by the unexpected opening of one of SunSetter's awnings.  Also in or around September 2015, a consumer reported to SunSetter that, in 2013, while she was removing the Cover from one of SunSetter's awnings, the awning opened suddenly, and the front bar of the awning hit her at chest level and caused her to fall off a ladder and sprain her ankle.

39. In or around March 2016, SunSetter again updated the installation and use instructions for its motorized retractable awnings.  SunSetter added instructions on the safe removal of the bungee tie-downs from the Cover and included the warnings that it had provided in the August 2015 updates.

40. Throughout 2016 and the first eight months of 2017, SunSetter received three additional reports of its awnings opening suddenly and unexpectedly when consumers removed the Cover from an awning.

41. In or around September 2017, SunSetter received notice of a lawsuit filed by the family of a consumer who died from injuries sustained in April 2017, after a retractable awning opened suddenly and unexpectedly as he removed the Cover, knocking him off a ladder and over a balcony.

*Report and Recall*

42. On October 16, 2017, SunSetter for the first time submitted to the CPSC a report regarding the Covers, pursuant to 15 U.S.C. § 2064(b).

43. By that time, SunSetter: had received at least 14 reports of its awnings unexpectedly opening when consumers removed the Cover, four of which were reports of consumers being injured, including one who died from his injuries; conducted simulation testing; issued a Safety Notice to dealers and consumers; and updated the use and installation instructions for its awnings.

44. Prior to October 16, 2017, SunSetter had not informed the CPSC about *any* of the incidents and injuries caused by the awnings springing open during removal of the Cover.

45. On August 13, 2019, SunSetter and the CPSC issued a joint press release announcing a recall of the Covers and telling Cover owners to not install Covers or remove any installed Covers until they received instructions from SunSetter.  Consumers were also instructed

9

to contact SunSetter for free breakaway safety clips and instructions for their use and instructions on how to safely remove any installed bungee tie-downs.

*SunSetter's Failure to Take Appropriate Actions to Ensure Compliance with Information Reporting Requirements in the Consumer Product Safety Act and Accompanying Regulations*

46. Upon information and belief, SunSetter has not implemented and maintained a reasonable and effective program or system for complying with the reporting requirements of the CPSA and related regulations.

47. Therefore, to ensure future compliance, injunctive relief is warranted.

## COUNT I

48. Paragraphs 1-47 are incorporated by reference and realleged as if set forth fully herein.

49. SunSetter, separately as to each individual Cover distributed in commerce, knowingly failed to immediately inform the CPSC, in violation of 15 U.S.C. §§ 2068(a)(4) and 2069, upon obtaining information that reasonably supported the conclusion that the Cover contained a defect that could create a substantial product hazard, (*i.e.*, a defect that could create a substantial risk of injury to the public) as required by 15 U.S.C. §§ 2064(a)(2) and (b)(3). These violations started when SunSetter obtained the information reasonably supporting the conclusion that the Cover contained a defect and continued until SunSetter informed the CPSC about the defect.

## COUNT II

50. Paragraphs 1-49 are incorporated by reference and realleged as if set forth fully herein.

51. Separately as to each individual Cover distributed in commerce, SunSetter knowingly failed to immediately inform the CPSC, in violation of 15 U.S.C. §§ 2068(a)(4) and

2069, upon obtaining information that reasonably supported the conclusion that the Cover created an unreasonable risk of serious injury or death, as required by 15 U.S.C. § 2064(b)(4). These violations started when SunSetter first obtained the information reasonably supporting the conclusion that the Cover created an unreasonable risk of serious injury or death and continued until SunSetter furnished such information to the CPSC.

## COUNT III

52.     Paragraphs 1-51 are incorporated by reference and realleged as if set forth fully herein.

53.     Because SunSetter's repeated, years-long failures to furnish information required under 15 U.S.C. § 2064(b)(3) and (4) were unlawful acts, in violation of 15 U.S.C. § 2068(a)(4), and SunSetter has not implemented and maintained a reasonable and effective program or system for compliance, injunctive relief is warranted, pursuant to 15 U.S.C. § 2071(a)(1).

## JURY DEMAND

The United States demands a trial by jury on all Counts so triable.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

I.      Assess civil penalties against SunSetter, in accordance with 15 U.S.C. § 2069, for each separate violation and the related series of violations alleged in Counts I and II of this Complaint.

II.     Award Plaintiff injunctive relief against SunSetter as set forth in Count III, in accordance with 15 U.S.C. § 2071(a)(1), that would: (1) require SunSetter to comply with the reporting requirements of the CPSA and its accompanying regulations; (2) assure such future compliance by requiring SunSetter to establish internal recordkeeping and monitoring systems

designed to provide timely reports to the CPSC whenever SunSetter obtains information which reasonably supports the conclusion that any of its products contains a defect which could create a substantial product hazard or creates an unreasonable risk of serious injury or death to consumers; (3) appoint a third-party monitor to ensure that SunSetter complies with all information-reporting requirements under the CPSA and its accompanying regulations; (4) provide for liquidated damages that become immediately due and payable in the event that SunSetter fails to comply with the reporting requirements of the CPSA; and (5) require SunSetter to establish escrow accounts containing funds that could be used to pay any liquidated damages imposed by the Court.

    III.       Award plaintiff judgment for its costs.

    IV.      Award other and further relief that this Court deems just and proper.

Dated: April 6, 2023							Respectfully submitted,

| | |
|---|---|
| BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br>Civil Division | RACHAEL S. ROLLINS<br>United States Attorney |
| ARUN G. RAO<br>Deputy Assistant Attorney General | s/ *Erin E. Brizius*<br>ERIN E. BRIZIUS<br>Assistant U.S. Attorney<br>United States Attorney's Office |
| AMANDA N. LISKAMM<br>Director<br>Consumer Protection Branch | 1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>(617) 748-3398<br>Erin.E.Brizius2@usdoj.gov |
| s/ *Christina Parascandola*<br>CHRISTINA PARASCANDOLA<br>Senior Litigation Counsel | OF COUNSEL: |
| NICOLE FRAZER<br>Trial Attorney<br>U.S. Department of Justice<br>Consumer Protection Branch<br>450 5th Street, NW<br>Sixth Floor, South<br>Washington, DC 20001<br>202-514-3097<br>Fax: 202 514-8742<br>christina.parascandola@usdoj.gov | AUSTIN C. SCHLICK<br>General Counsel<br>MELISSA V. HAMPSHIRE<br>Assistant General Counsel<br>HARRIET KERWIN<br>Attorney<br>RENEE H. MCCUNE<br>Attorney<br>Office of the General Counsel<br>U.S. Consumer Product Safety Commission<br>Bethesda, MD 20814<br>AMELIA D. HAIRSTON-PORTER<br>Attorney<br>Office of Compliance and Field Operations<br>U.S. Consumer Product Safety Commission<br>Bethesda, MD 20814 |