UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

SUNSETTER PRODUCTS LP,

        Defendant.

Case No. 1:23-CV-10744 (ADB)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

I.     THE CONSUMER PRODUCT SAFETY COMMISSION ............................................ 2

II.    THE ALLEGATIONS OF THE COMPLAINT ................................................. 3

ARGUMENT ............................................................................................................ 6

I.     THE COMPLAINT SUBJECTS SUNSETTER TO UNCONSTITUTIONAL
ENFORCEMENT PROCEEDINGS. .................................................................... 6

     A.     The CPSA's for-cause removal restrictions violate separation of powers. ........... 6

     B.     The Complaint must be dismissed. ........................................................ 9

II.    COUNT III FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE
GRANTED. .................................................................................................. 12

     A.     The CPSA does not authorize the injunctive relief requested. ............................ 12

     B.     The Complaint does not plausibly show that future violations are likely............ 17

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
    141 S. Ct. 1341 (2021) ................................................................................................. 13

*Axon Enter., Inc. v. FTC*,
    143 S. Ct. 890 (2023) ........................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 17

*Blackstone Realty LLC v. FDIC*,
    244 F.3d 193 (1st Cir. 2001) ......................................................................................... 6

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ...................................................................................................... 8

*Brown v. Trs. of Bos. Univ.*,
    891 F.2d 337 (1st Cir. 1989) ....................................................................................... 15

*Calcutt v. Fed. Deposit Ins. Corp.*,
    37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds* 2023 WL 3571460 (S.Ct.
    May 22, 2023) ............................................................................................................. 12

*Caudle v. Dist. of Columbia.*,
    825 F. Supp. 2d 73 (D.D.C. 2011) .............................................................................. 17

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022), *cert. granted* (2023) ................................................... 11

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .......................................................................................... *passim*

*Consumers' Rsch. v. CPSC*,
    592 F. Supp. 3d 568 (E.D. Tex. 2022), *appeal docketed*, No. 22-40328 (5th
    Cir. May 18, 2022) ................................................................................................... 1, 8

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) .................................................................................................. 7, 9

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ............................................................................................... 7, 8, 9

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) .............................................................................. 14, 15

## TABLE OF AUTHORITIES
### continued

Page(s)

*Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*,
    347 F. Supp. 3d 61 (D. Mass. 2018) ................................................20

*Menard v. CSX Transp., Inc.*,
    698 F.3d 40 (1st Cir. 2012) ...............................................19, 20

*Rodi v. S. New England Sch. of L.*,
    389 F.3d 5 (1st Cir. 2004) ..........................................................6

*Ruivo v. Wells Fargo Bank, N.A.*,
    766 F.3d 87 (1st Cir. 2014) ........................................................2

*SEC v. Gentile*,
    939 F.3d 549 (3d Cir. 2019) ......................................................17

*SEC v. Lemelson*,
    57 F.4th 17 (1st Cir. 2023) ........................................................18

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................... *passim*

*United States v. Blue Ribbon Smoked Fish, Inc.*,
    179 F. Supp. 2d 30 (E.D.N.Y. 2001) ..................................15, 18

*United States v. Dianovin Pharms., Inc.*,
    475 F.2d 100 (1st Cir. 1973) ......................................................18

*United States v. Richlyn Lab'ys, Inc.*,
    822 F. Supp. 268 (E.D. Pa. 1993) ..............................................15

*United States v. Scotty's, Inc.*,
    173 F. Supp. 3d 549 (E.D. Mich. 2016) ..............................15, 18

*United States v. Spectrum Brands, Inc.*,
    924 F.3d 337 (7th Cir. 2019) ..............................................16, 19, 20

*United States v. Toys "R" Us*,
    754 F. Supp 1050 (D. N.J. 1991) ..........................................16, 17

*United States v. Zen Magnets*,
    170 F. Supp. 3d 1365 (D. Colo. 2016) ..................................16, 20


**Constitutional Provisions**

U.S. Const. Art. II § 1, cl. 1 ...........................................................6

**TABLE OF AUTHORITIES**
continued

Page(s)

**Statutes**

15 U.S.C.

§ 2053(a) ...............................................................................................2, 7
§ 2053(b)(1) ................................................................................................2
§ 2056(a) ............................................................................................2, 7, 8
§ 2058 ........................................................................................................8
§ 2061 ........................................................................................................7
§ 2065 ........................................................................................................2
§ 2065(b) .............................................................................................14, 20
§ 2068 ................................................................................................. *passim*
§ 2068(3) ..................................................................................................14
§ 2068(a)(2) ................................................................................................5
§ 2068(a)(4) ................................................................................................5
§ 2069 ......................................................................................................16
§ 2069(a) ................................................................................................3, 8
§ 2071 .........................................................................................13, 14, 16
§ 2071(a) ........................................................................................... *passim*
§ 2076 ........................................................................................................7
§ 2076(a) ................................................................................................2, 8
§ 2076(b) ........................................................................................... *passim*

21 U.S.C. § 332 ..............................................................................................15

**Regulations**

16 CFR

§ 1115.1 ....................................................................................................14
§§ 1115.4-1115.12 ....................................................................................17
§ 1115.13 ..................................................................................................14

**Other Authorities**

Fed. R. Civ P. 12(b)(6).....................................................................................1, 6

SunSetter Products LP ("SunSetter") respectfully submits this memorandum of law in support of a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

The United States commenced this action "on behalf of the Consumer Product Safety Commission" ("CPSC" or "Commission"), pursuant to provisions of the Consumer Product Safety Act, 15 U.S.C. §§ 2051-89 *et seq*. ("CPSA" or "Act"). Compl. ¶ 8. The CPSA authorizes the CPSC to initiate enforcement proceedings to obtain civil monetary penalties, and to restrain certain violations of the Act. As one district court has already determined, under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the CPSC's structure violates the constitutional separation of powers because its enabling legislation restricts the President's power to remove Commissioners from office at will. *See Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568, 580 (E.D. Tex. 2022), *appeal docketed*, No. 22-40328 (5th Cir. May 18, 2022). As a result, this enforcement proceeding, initiated by an unconstitutionally structured agency, subjects SunSetter to "here-and-now" constitutional injury for which the only remedy is to dismiss the Complaint. *See Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 903, 904 (2023).

Moreover, the relief the CPSC seeks in this case exemplifies the potential for overreaching by unelected and unaccountable executive officers—exactly what the Constitution's structural provisions were intended to prevent. In October 2017, almost five-and-a-half years ago, SunSetter delivered a report to the CPSC detailing an issue with the safe removal of the vinyl covers that protect SunSetter's motorized awnings. The CPSC alleges that SunSetter was required to report information concerning that issue earlier than it did. Compl. ¶¶ 48-51. There is no allegation of any other violation of the Act or deficiency in responding to any request of the CPSC. Yet the Complaint seeks an injunction extraordinary in its burden and intrusiveness, that would enlist the

1

Court to manage SunSetter's internal compliance operations on behalf of the Commission, appoint an outside compliance monitor, and create an unprecedented "liquidated damages" escrow, all against the mere possibility of some further reporting violation in the future. Compl. at 11-12. Those demands exceed the scope of the Court's statutory injunction authority, are factually unsupportable on the allegations of the Complaint, and out of proportion with the nature of SunSetter's business and the conduct alleged. The Complaint should be dismissed because it was brought by an unconstitutionally constituted commission, and, at a minimum, the extraordinary claim for broad injunctive relief should be stricken.

## **FACTUAL BACKGROUND**[1]

### I.   THE CONSUMER PRODUCT SAFETY COMMISSION

The CPSC is an independent federal regulatory agency established by Congress to administer and enforce the CPSA and certain other laws. 15 U.S.C. §§ 2053(a); 2068-2071, 2076(b)(7)(A). The CPSC consists of five Commissioners, each appointed by the President and confirmed by the Senate, for seven-year terms. *Id.* § 2053(a), (b)(1). Congress has provided that the President may remove Commissioners for "neglect of duty or malfeasance in office but for no other cause." *Id.* § 2053(a).

The CPSC is authorized to exercise a broad range of characteristically "executive" powers. It may promulgate regulations on various subjects, *id.* §§ 2056(a); 2057; 2065, inspect records and premises, *id.* § 2065, conduct "any hearing or other inquiry necessary or appropriate to its functions," *id.* § 2076(a), and compel the production of evidence and testimony, including by subpoena. *Id.* § 2076(b)(9).

---

[1] For purposes of this motion to dismiss, the Court can assume the truth of the factual allegations of the Complaint, but not of "conclusory legal allegations." *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir. 2014).

The CPSC may also initiate actions in federal court "for the purpose of enforcing the laws subject to its jurisdiction," as it has done here. *Id.* §§ 2069(a), 2076(b)(7)(B). Section 2068 of the CPSA defines prohibited acts under the statute. The CPSC may sue for civil penalties for violation of those prohibitions, and can seek a maximum penalty of $15,000,000 for any related series of violations (exclusive of inflation adjustments required by statute). *Id.* §§ 2069(a)(1); 2076(b)(7)(A).

To initiate a civil penalty action, the CPSC first makes a written "request for . . . representation" to the Attorney General. *Id.* § 2076(b)(7)(A). The Attorney General has 45 days to accept the representation, after which the CPSC is free to proceed with the case "through its own legal representative and in its own name." *Id.* The CPSC may independently bring suit for injunctive relief, including to "restrain any violation of section 2068" and to seize property. *Id.* § 2071(a)(1). And the CPSC may criminally prosecute "knowing and willful" violations of section 2068 either "with the concurrence of . . . or through the Attorney General." *Id.* § 2076(b)(7)(B). This action was commenced by the United States "on behalf of the CPSC [and] under the CPSA," and the Complaint lists attorneys from both agencies as counsel, including the general counsel of the CPSC and four assistants. Compl. ¶ 8; *id.* at 13.

## II.   THE ALLEGATIONS OF THE COMPLAINT

SunSetter, for many years headquartered in Malden, Massachusetts, manufactures and sells motorized, retractable awnings (sun shades) and accessories. *Id.* ¶¶ 2, 11, 29. The Complaint concerns an issue with the safe removal of vinyl covers that SunSetter sold to protect the awnings from the weather when the awnings were not in use. *Id.* ¶¶ 2-4.

Between 1999 and 2019, SunSetter sold approximately 270,000 awning covers to consumers or retailers. *Id.* ¶ 28. The Complaint alleges that, beginning in 2012, SunSetter employees received occasional reports from customers that, when removing the awning cover, the

awning had unexpectedly opened. *Id.* ¶¶ 4, 30-34. Prior to August 2015, there were seven such reports, including one report of injuries. *Id.* ¶¶ 4, 30-34.

In or around August 2015, SunSetter performed testing in which it was able, under certain conditions, to reproduce the issue the seven customers had reported. *Id.* ¶ 35. Specifically, the awning would open if (1) the awning was closed and the cover securely attached using bungee tie-downs, (2) the awning was left plugged in to an electrical outlet, (3) the awning's remote control was activated, (4) the cover prevented the awning from opening, (5) awning fabric unwound under the cover, and (6) the bungee-cord tie-downs were removed. *Id.*

Based on that information, SunSetter sent updated instructions for the covers and awnings, followed by safety notices explaining how to remove the covers correctly and safely, to over 300,000 existing customers. *Id.* ¶¶ 36-37. After distributing warnings and revised instructions, SunSetter received further occasional reports of the same issue (including one of an incident that had occurred years earlier). *Id.* ¶¶ 38-40. In total, the Complaint alleges that SunSetter received 14 reports that an awning had opened after the cover was removed, out of approximately 270,000 covers in circulation. *Id.* ¶¶ 27-28, 43.

In January 2016, Springs Window Fashions, LLC acquired SunSetter from SunSetter's founders. *Id.* ¶ 11. In September 2017, SunSetter received notice of a lawsuit alleging that a customer had died after being knocked from a ladder and falling from a balcony while removing a SunSetter awning cover. *Id.* ¶ 41. In October 2017, SunSetter submitted an initial report to the CPSC of information concerning issues with the safe removal of its awning covers. *Id.* ¶ 42. In August 2019, in coordination with the CPSC, SunSetter conducted a voluntary recall of the covers, providing instructions on how to obtain free, breakaway safety clips to replace the supplied bungee tie-downs, and how to safely remove installed tie-downs. *Id.* ¶ 45.

Approximately five-and-a-half years after SunSetter reported the issue regarding the safe removal of the covers to the CPSC, the CPSC initiated this action seeking civil monetary penalties for SunSetter's non-reporting, before October 2017, of information regarding the safe removal of the covers, and an injunction. *Id.* ¶ 44, 47. There is no allegation in the Complaint of any other violation of the CPSA or related regulations by SunSetter or any of its affiliated persons. *See id.* ¶¶ 49, 51. The Complaint also contains no allegation of any deficiency in connection with the 2019 voluntary recall that SunSetter performed in coordination with the CPSC to address safe removal of the vinyl covers. *See id.* ¶ 45.

Count III of the Complaint demands an injunction pursuant to CPSA § 2071(a)(1), which provides the court with jurisdiction to "restrain any violation" of CPSA § 2068. Notwithstanding the five-and-half years that have elapsed since the October 2017 report, the only basis alleged for the Court to exercise such authority is (1) SunSetter's alleged non-reporting prior to October 2017 in violation of § 2068(a)(4), and (2) the allegation that "[u]pon information and belief, SunSetter has not implemented and maintained a reasonable and effective system for complying with the reporting requirements of the CPSA and related regulations." *Id.* ¶¶ 46, 53. The Complaint does not allege any deficiency in the information that SunSetter provided to the CPSC in October 2017 or thereafter, or SunSetter's response to any CPSC investigative request, or any specific deficiency in SunSetter's compliance program.

Based on this conclusory allegation, the government seeks a Court order requiring that SunSetter (1) "comply with the reporting requirements of the CPSA and its accompanying regulations"; and (2) "establish" unspecified "internal recordkeeping and monitoring systems designed to provide timely reports to the CPSC whenever" such reports are required by CPSA § 2064(b). Compl. at 11-12. The government also requests that the Court (3) "appoint a third-party

monitor to ensure that SunSetter complies with all information-reporting requirements under the CPSA and its accompanying regulations"; (4) set "liquidated damages that become immediately due and payable" on failure "to comply with the reporting requirements of the CPSA"; and (5) order SunSetter to fund an escrow for the payment of liquidated damages in the event the Court awards such damages in the future. Compl. at 11-12.

## ARGUMENT

### I.   THE COMPLAINT SUBJECTS SUNSETTER TO UNCONSTITUTIONAL ENFORCEMENT PROCEEDINGS.

The CPSA unconstitutionally restricts the President's power to remove Commissioners at will, in violation of the separation of powers. *See Seila Law*, 140 S. Ct. at 2191. As a result, this proceeding, initiated by the Commission to enforce provisions of the CPSA, subjects SunSetter to a structurally defective exercise of executive power, inflicting a continuing "here-and-now" constitutional injury for which dismissal is the only remedy.[2]

### A.   The CPSA's for-cause removal restrictions violate separation of powers.

Under Article II, "the 'executive Power' - all of it - is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 140 S. Ct. at 2191 (quoting U.S. Const. Art. II § 1, cl. 1; § 3). The President, of course, relies on "subordinate officers for assistance" in executing the laws, with the power to appoint, oversee and control those officers. *Id.* at 1291. And to that end, the Constitution gives the President "the authority to remove those who assist him in carrying out his duties." *Id.* at 2191, 2198 (quotation marks omitted).

The President's power to remove officers at will is "essential" to the President's execution

---

[2] It is well-settled that where an affirmative defense can be adjudicated on the allegations of the complaint alone, the defense is properly raised by a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6). *See Rodi v. S. New England Sch. of L.*, 389 F.3d 5, 12 (1st Cir. 2004); *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001).

of the laws. *Seila Law,* 140 S. Ct. at 2198. It is the ultimate means by which the President is empowered to hold those officers accountable, and it ensures that the President in turn is "held fully accountable" to the people in discharging the President's Article II obligation to execute the laws. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 514 (2010).

The Supreme Court has recognized two narrow exceptions to this "unrestricted removal power." *Seila Law*, 140 S. Ct. at 2192. Under the first exception, Congress may "provide tenure protections to certain inferior officers with narrowly defined duties" that do not include "policymaking or administrative authority." *Id*. at 2192, 2199-2200. Congress may also provide tenure protections "for multimember expert agencies that do not wield substantial executive power," *id*. at 2199-2200, an exception initially recognized in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). The two exceptions represent "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 140 S. Ct. at 2199-2200 (quotation marks omitted).

The CPSA restricts the President's power to remove CPSC commissioners except "for neglect of duty or malfeasance in office." 15 U.S.C. § 2053(a). Those for-cause removal restrictions violate the separation of powers, and neither of the exceptions noted above apply to the CPSC. *First*, the inferior officers exception does not apply because CPSC Commissioners are principal officers. Inferior officers are those "directed and supervised" by other officers the President appoints. *Seila Law*, 140 S. Ct. at 2199 n.3. The CPSC Commissioners are not so directed or supervised and they have broad "policymaking [and] administrative authority," not "narrowly defined duties." *Id*. at 2191; 2199-2200. Like the CFPB director in *Seila Law*, the Commissioners are authorized to bring "the coercive power of the state to bear on millions of private citizens and businesses." *Id*. at 2191, 2200-01; *see also* 15 U.S.C. §§ 2056-2058, 2061, 2063-2071, 2076.

7

*Second*, the *Humphrey's Executor* exception does not apply because the Commissioners exercise "substantial executive power" without meaningful supervision. *Seila Law*, 140 S. Ct. at 2200; *see Consumers' Rsch.*, 592 F. Supp. 3d at 580   (holding that the CPSC's structure is unconstitutional because the Commissioners wield "substantial executive power"). The CPSC wields powers to make rules, conduct administrative adjudications, and bring enforcement proceedings, that the Supreme Court recognizes as executive powers under Article II. *See* 15 U.S.C. § 2056(a) (power to promulgate "consumer product safety standard[s]"); § 2057 (power to issue nationwide hazardous product bans); § 2076(a)-(b) (power to conduct hearings and issue subpoenas); *Collins v. Yellen*, 141 S. Ct. 1761, 1785-86 (2021) ("executive power[s]" include "issu[ing] . . . regulation[s]" and agency subpoena power); *Seila Law*, 140 S. Ct. at 2198 n.2, 2200 (agency adjudications are an exercise of executive power); *Bowsher v. Synar*, 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

This case itself results directly from the Commissioners' exercise of a "quintessentially executive power not considered in *Humphrey's Executor*," to initiate actions in federal court "to seek daunting monetary penalties against private parties" as a means of enforcement. *Seila Law*, 140 S. Ct. at 2200 (discussing CFPB enforcement powers); *see* 15 U.S.C. § 2076(b)(7)(A) (authorizing CPSC to initiate and prosecute civil actions); § 2069(a) (1), (a)(3)(A) (providing for civil monetary penalties); § 2071(a) (authorizing CPSC to sue for injunctive relief). Indeed, the CPSC is even authorized, "with the concurrence of the Attorney General," to prosecute criminal violations of the CPSA. 15 U.S.C § 2076(b)(7)(B). The power to commence actions in federal court to enforce a broad regulatory statute like the CPSA through civil penalties and injunctions is a "potent" and "quintessential[]" executive power. *Seila Law*, 140 S. Ct. at 2193, 2200.

Since neither of the two limited exceptions to the President's otherwise "unrestricted removal power" is applicable, the CPSC is unconstitutionally structured.[3]

### B.        The Complaint must be dismissed.

The Supreme Court has recognized that a party, like SunSetter here, subject to enforcement proceedings by an agency unconstitutionally insulated from the President's removal power, suffers a "here and now injury" for which it is entitled to relief. *Axon Enter.*, 143 S. Ct. at 903, 904; *Free Enter. Fund*, 561 U.S. at 513 (explaining that relief must be "sufficient to ensure" that agency rules are "enforced only by a constitutional agency accountable to the Executive"). In contrast to that right to relief for continuing injury, the Supreme Court has held that a party seeking "retrospective relief" for a removal violation—in that instance with respect to an inter-agency agreement that was no longer in effect—must prove that the unconstitutional restriction on removal was the cause of some retrospectively "compensable harm." *Collins*, 141 S. Ct. at 1789.

In *Axon Enterprise*, decided in April 2023, the Supreme Court explained the nature of the "'here-and-now injury' of subjection to an unconstitutionally structured decisionmaking process" in agency enforcement actions. 143 S. Ct. at 904. There, petitioners had sought relief in the district court from "being subjected" to "unconstitutional agency authority" in proceedings before administrative law judges who were statutorily insulated from at-will removal. *Id.* at 898-99, 903-

---

[3] For reasons the Supreme Court explained in *Seila Law*, the limited *Humphrey's Executor* exception should not be extended to agencies like the CPSC that perform core executive functions. The decision in *Humphrey's Executor* was limited to "officers of the kind [t]here under consideration," *Humphrey's Executor*, 295 U.S. at 632, and "the contours of the *Humphrey's Executor* exception [therefore] depend upon the characteristics of the agency" at issue. *Seila Law*, 140 S. Ct. at 2198. As *Seila Law* stressed, the *Humphrey's Executor* Court "viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Id.* at 2198 (quoting *Humphrey's Ex'r*, 295 U.S. at 628). Rather, the FTC was said to "perform [] legislative and judicial functions." *Id.* at 2199. The CPSC wields core executive powers, making it different in kind for purposes of Article II than the FTC in *Humphrey's Executor*, and any extension of *Humphrey's Executor* to the CPSC would therefore unreasonably stretch the core holding of that case.

04. The Supreme Court explained that this constitutional injury is independent of the proceeding's "outcome, or of other decisions made within it," and unusual because it is "impossible to remedy once the proceeding is over." *Id.* at 903, 904. That determination was the lynchpin of the Supreme Court's holding that petitioners had the right to proceed with their claims immediately in the district court, without exhausting the administrative process. *Id.* at 903-04. Analogizing to the assertion of immunity defenses, which also require a prospective remedy at the outset of a case, the Court explained that unless petitioners were afforded an avenue to prospective relief, they would simply lose "their rights not to undergo the complained-of agency proceedings." *Id.* at 904.

The CPSC's Complaint in this case, initiated by an unconstitutionally structured agency, subjects SunSetter to such a "here-and-now injury." The Complaint seeks civil enforcement penalties and injunctive relief in service of the CPSC's enforcement policies and its interpretation of the governing statute. Dismissal provides the only relief from that ongoing injury. Dismissal will ensure that a CPSC decision to pursue SunSetter is made only subject to the executive supervision the Constitution requires. The prosecution of the Complaint against SunSetter constitutes a continuing constitutional harm, *i.e.*, an illegitimate enforcement proceeding by and on behalf of an unconstitutionally structured agency.

In *Collins v. Yellen*, the Supreme Court limited the type of relief a district court can provide to a party injured by an unconstitutionally structured agency, but that holding does not apply to the relief sought here. *Collins* addressed purely "retrospective relief" for a removal violation, not prospective relief for here-and now-injury. 141 S. Ct. at 1787, 1789. In *Collins*, shareholders of Fannie Mae and Freddie Mac challenged the constitutionality of the Federal Housing Finance Authority ("FHFA"), seeking disgorgement of billions of dollars in dividends paid pursuant to an agreement concluded by the FHFA, and to enjoin further implementation of the agreement. *Id.* at

1775. Prior to decision in *Collins*, however, the challenged dividend provisions were terminated, making the request for prospective relief moot. *Id.* at 1779-80. Thus, *Collins* addressed only the possibility of "retrospective relief" and retrospective "compensable harm" (i.e. the disgorgement remedy the shareholders demanded). *Id.* at 1787, 1789.

   As *Axon* has further clarified, there are sound reasons why requirements to obtain prospective and retrospective relief for removal violations may differ. The "here-and-now" injury of an enforcement proceeding without constitutionally mandated supervision "is impossible to remedy once the proceeding is over." *Axon*, 143 S. Ct. at 903. In *Collins's* terms, that injury standing alone may not amount to retrospectively "compensable harm." *See* 141 S. Ct. at 1789. But it can and should be remedied prospectively before the proceeding concludes and SunSetter is potentially subjected to penalties and injunctive relief. *See Axon,* 143 S. Ct. at 903-04.

   *Collins* is distinguishable for additional reasons. The CPSC initiated this proceeding against SunSetter without constitutionally mandated Presidential supervision, a situation that *Collins* did not address. As *Collins* explains, the agreement in *Collins* was adopted by an *acting* agency director, who was subject to at-will removal by the President, and the only agency actions at issue in *Collins* concerned the implementation of the dividend agreement by subsequent directors. 141 S. Ct. at 1787. Moreover, *Collins* involved shareholders attacking an agreement between two government agencies based on the agreement's collateral effects, not parties presently subjected to legal process in enforcement proceedings that will determine their rights. *Id.* at 1772-75.[4] Accordingly, as *Axon* makes clear, the most appropriate remedy for the here-and-now injury

---

[4] Since *Collins* was decided—but before the decision in *Axon*—the Fifth and the Sixth Circuit Courts of Appeals issued decisions extending *Collins* to cases seeking prospective relief from agency regulations. *See Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 631 n.5 (5th Cir. 2022), *cert. granted* (2023) (No. 22-448); *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds* 2023 WL 3571460 (S.Ct. May 22, 2023) (per curiam).

presented by the Complaint is dismissal.

## II.   COUNT III FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

Count III seeks extraordinary, impermissible injunctive relief, that exceeds the Court's limited statutory injunction authority under the CPSA, and that would effectively require the Court to become a manager of SunSetter's internal compliance operations on the CPSC's behalf. The CPSC not only asks the Court to order the adoption of undefined internal recordkeeping systems that are not required by any statute or regulation, but seeks appointment of a third-party monitor, and the deposit into escrow of "liquidated damages" for hypothetical future violations of SunSetter's reporting obligations. The Commission seeks that extraordinary relief based solely on a conclusory allegation, on "information and belief," that SunSetter "has not implemented a reasonable and effective program or system for compliance" with its reporting obligations under the CPSA, which SunSetter is alleged to have breached over five-and-a-half years ago. Compl. ¶ 46. SunSetter should not be required to defend this case in the shadow of the CPSC's legally unjustified and factually unsupported demand for this extraordinary, burdensome, and intrusive injunctive relief.

### A.   The CPSA does not authorize the injunctive relief requested.

The CPSC seeks an injunction under 15 U.S.C. § 2071(a)(1), which provides that the district court "shall have jurisdiction" to "restrain any violation of section 2068" of Title 15 (defining "prohibited acts" under the statute to include violation of the § 2064(b) reporting

---

These circuit court decisions misapprehend *Collins* and should not be followed here. They address the effect of an agency regulation, not that of an on-going enforcement action. They wrongly ignore that *Collins's* holding, by its express terms, is limited to issues of retrospective relief. And they were decided without the benefit of *Axon,* which clarifies the unique characteristics of the here-and-now injury inflicted by unconstitutionally structured enforcement proceedings showing why the same removal violation that merits prospective relief may not be amenable to the retrospective remedies at issue in *Collins*.

requirement). The Supreme Court most recently addressed the interpretation of statutory injunction provisions in *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021). There, a unanimous Court reversed a long-established lower-court rule permitting the award of equitable monetary relief in Federal Trade Commission ("FTC") enforcement actions. *Id.* at 1347, 1351. In the process, the Court explicitly rejected the FTC's expansive interpretation of statutory grants of injunction authority. *Id.* at 1349-50. The Supreme Court clarified that no "universal rule of interpretation" applies to grants of statutory authority to issue equitable relief, and that each such statute is to be analyzed on its own terms and using ordinary principles of interpretation—in particular, the plain meaning of the text and the structure of the statute. *Id.* at 1347-50.

Under a plain reading of § 2071(a)(1), the CPSC seeks relief well beyond the limits of statutory authority. The CPSC has not asked to restrain some specific conduct with respect to SunSetter's obligation to report under § 2064(b). Instead, it asks the Court to order SunSetter to adopt unspecified and standardless "internal record keeping and monitoring systems designed to provide timely reports" to the CPSC of any information reportable under the law or CPSC regulations. Compl. at 11-12. But the CPSA does not impose a legal obligation to establish or maintain *any* system or program for § 2064(b) reporting. The failure to have such a system, alleged in the Complaint, is not a violation of § 2068 that the Court may permissibly "restrain" under the plain terms of § 2071(a)(1).

Other provisions of the statute confirm that § 2071 does not permit the relief requested. The statute expressly authorizes the CPSC to address internal record-keeping and reporting requirements through substantive rule-making. *See* 15 USC § 2065(b).[5] And § 2068(3) makes it a

---

[5] Specifically, § 2065(b) provides that regulated persons "shall establish and maintain such records, make such reports, and provide such information as the Commission may, by rule, reasonably

prohibited act—and thus one subject to restraint under § 2071(a)(1)—to "fail or refuse to establish or maintain records, or fail or refuse to make reports or provide information. . . *as required under this chapter or rule thereunder*" (emphasis added). But the CPSC has not exercised that express authority to define internal recordkeeping and reporting obligations. While the CPSC has issued interpretive rules listing information that it wishes to see in § 2064(b) reports, *see* 16 CFR Part 1115.1; § 1115.13, it has never adopted rules under § 2065(b)—interpretive or otherwise— requiring any form of internal recordkeeping or reporting "to implement the purposes" of § 2064(b). Targeting an individual business like SunSetter for *ad-hoc*, special regulation through the courts, in the guise of restraining non-existent "violations," is inconsistent with Congress's express intent that the CPSC promulgate rules of general applicability to define internal recordkeeping and reporting obligations, which the CPSC would then be authorized to enforce in judicial proceedings under § 2071.

Similarly, the lack of definiteness in the CPSC's proposed injunction makes it unenforceable (an inevitable result of failing to promulgate the rules that Congress specified as a predicate to injunctive relief). *See LabMD, Inc. v. FTC,* 894 F.3d 1221, 1236-38 (11th Cir. 2018) (vacating administrative order that, rather than "enjoin a specific act or practice," ordered the regulated party to "implement" and "maintain a data security program," "reasonably designed to protect the security, confidentiality and integrity of personal information," and to subject that program to monitoring by outside consultant.).[6] As in *LabMD*, the standardless mandate that the

---

require for the purpose of implementing this chapter, or to determine compliance with rules or orders prescribed under this chapter."

[6] The order in *LabMD* at least was tied to an adjudicative finding that the failure "to design and maintain a reasonable data-security program" violated the law. *See* 894 F.3d at 1231. Here, there can be no such finding, because no law or regulation requires maintenance of any internal recordkeeping or monitoring systems in furtherance of § 2064(b).

CPSC has proposed here would put the "[C]ourt . . . in the position of managing [SunSetter's] business in accordance with the Commission's wishes;" but "micromanaging is beyond the scope of court oversight contemplated by injunction law." *Id.* at 1237; *See also Brown v. Trs. of Bos. Univ.,* 891 F.2d 337, 361 (1st Cir. 1989) (vacating injunction that would "embroil the courts in the University's internal affairs," and allow "circumvent[ion] of administrative procedures by simply invoking the contempt jurisdiction of the district court.").

This understanding of § 2071(a)(1) also reflects the established way injunctions have been handled in similar consumer-safety contexts, in particular under authority of the Food, Drug and Cosmetic Act, 21 USC § 332 (authorizing the district court to "restrain violations" of certain provisions of the act). Courts have regularly mandated that businesses implement internal systems to address contamination and quality-control in food and drug manufacture. *See, e.g., United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30, 50–51 (E.D.N.Y. 2001); *United States v. Richlyn Lab'ys, Inc.*, 822 F. Supp. 268, 274 (E.D. Pa. 1993). But they have done so pursuant to statutes and regulations that directly and specifically regulate manufacturers' operations by, for example, requiring detailed plans to control risks of bacterial contamination, or specifying current good manufacturing practices they must employ. *E.g. United States v. Scotty's, Inc.,* 173 F. Supp. 3d 549, 554-557 (E.D. Mich. 2016) (discussing specific regulatory mandates for bacterial hazard control plans and related CGMPs); *Blue Ribbon*, 179 F. Supp at 43-46 (similar); *Richlyn Lab'ys,* 822 F. Supp at 271-73 (similar). The injunctions in those cases restrict specific violations (generally on a record of egregious, bad-faith, non-compliance). They do not fashion new regulatory policy *ad-hoc* through enforcement proceedings as the CPSC is seeking to do here.

These limitations on the power to restrain violations are also consistent with injunctions sought by the CPSC in *United States v. Toys "R" Us*, 754 F. Supp 1050, 1058-59 (D.N.J. 1991)

(injunction against future import or distribution of toys banned as hazardous products in violation of § 2068); and *United States v. Zen Magnets*, 170 F. Supp. 3d 1365, 1376 (D. Colo. 2016) (injunction to restrain sales and recall magnet toys sold in violation of § 2068). *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 356 (7th Cir. 2019), is the only case approving a CPSA injunction that fell outside of these lines. But *Spectrum Brands* did not even consider the question of statutory interpretation here—it rejected a different argument that § 2071 prohibits an injunction to restrain *future* violations of § 2068. *Id.*[7]

Other relief the CPSC requests deviates still further from the CPSA's limited grant of statutory authority. The Complaint seeks an injunction providing for "liquidated damages in the event SunSetter fails to comply with reporting requirements," and ordering SunSetter to fund escrow accounts for the payment of such damages. Compl. at 12 (Request for Relief, II(4)-(5)). That relief is impermissible because, among other things, it seeks to impose a monetary penalty that is not authorized by statute, *see* 15 USC § 2069, and would deprive SunSetter of property in advance of any determination of a violation, contrary to the Act and to due process.

Stripped of those impermissible elements, what remains of Count III is a request for an unenforceable "obey-the-law" injunction, commanding SunSetter to meet reporting obligations that are defined by a standard of reasonableness—i.e. of negligence—with no guidance as to what that command means beyond the factual specifics of this case. *See* Compl. at 11 (Relief Requested II(1)); *see Caudle v. Dist. of Columbia.,* 825 F. Supp. 2d 73, 81 (D.D.C. 2011) ("an impermissible 'obey the law' injunction is one that is not meaningfully more specific than the law in question.").

---

[7] Also inapposite is dicta in *Zen Magnets*, describing the scope of equitable relief permitted under the CPSA as "general" and "not restricted." 170 F. Supp. 3d at 1376-78. *Zen Magnets* dealt with the availability of "backward-looking" remedies akin to disgorgement, that seek to restore the status quo prior to a violation, *Id.* at 1376, and was decided years before *AMG Capital* raised the bar for equitable remedies that reach beyond the scope of an express grant of statutory authority.

It is of no help that the CPSC asks the Court to incorporate the Commission's own interpretive regulations into the injunction. *First,* the Commission asks the Court to give the force of law to purely interpretive regulations. *Second*, the regulations do nothing to cure the lack of specificity in an injunction commanding general obedience to § 2064(b). The regulations simply advise businesses to consider a laundry list of factors and information in deciding whether to report (including the full panoply of product liability law, consumer safety law and regulations, and the agency's own practices and experience). *See* 16 CFR §§ 1115.4-1115.12. Accordingly, the injunctive relief requested by the CPSC is unauthorized and Count III should be dismissed.

### B.  The Complaint does not plausibly show that future violations are likely.

Even if the Court had the statutory authority to grant the type of injunction the CPSC is seeking, a claim for a statutory injunction, like any other claim, must be supported by allegations "stat[ing] a plausible claim for relief." *SEC v. Gentile*, 939 F.3d 549, 564 (3d Cir. 2019); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). The factual allegations here are insufficient.

Courts deciding whether to grant an injunction based on an alleged risk of future harm under the CPSA have required the government to prove there is a "reasonable likelihood of future violations" unless the injunction is granted. *Toys "R" Us, Inc.*, 754 F. Supp at 1058-59 (denying requested injunction). Factors courts have considered in assessing whether future violations are likely include the nature of the conduct, such as "the degree of scienter involved," and the "isolated or recurrent nature of the infraction," the "nature of the defendant's occupation," the "genuineness of . . . efforts to conform to the law," and "progress towards improvement." *See id.* A "mere possibility" of future violations is not a "reasonable likelihood." *SEC v. Lemelson*, 57 F.4th 17, 31 (1st Cir. 2023).

The Complaint fails to allege facts making it plausible that SunSetter is likely to violate § 2064(b) in the future. As to the allegations of SunSetter's past conduct, the Complaint does not

allege or support any inference that SunSetter willfully, or recklessly breached its reporting obligations, or even had a motive to avoid reporting. Nor does the Complaint allege any broader history of CPSA compliance violations, either by SunSetter or any of its affiliated persons, (including Springs Window Fashions LLC, which acquired SunSetter in 2016 before SunSetter's CPSC report). Those facts sharply distinguish this case from the securities and Food Drug and Cosmetic Act injunction cases to which courts generally turn as analogies for the CPSA and that typically involve clear evidence of scienter and deliberate non-compliance. *See, e.g., Lemelson*, 57 F.4th at 28-30 (discussing evidence of scienter); *United States v. Dianovin Pharms., Inc.,* 475 F.2d 100, 103 (1st Cir. 1973) (noting "seriously deficient conditions and practices at appellants' plant," and "a history of unsuccessful efforts to obtain compliance"); *Scotty's, Inc.,* 173 F. Supp. 3d at 557 (noting "repeated warnings" over years of inspections); *Blue Ribbon*, 179 F. Supp. 2d at 50 (noting fines, years of failed inspections, and warnings).

As to SunSetter's current conduct, the Complaint relies on a conclusory allegation that "[u]pon information and belief, SunSetter has not implemented and maintained a reasonable and effective program or system for complying with the reporting requirements of the CPSA and related regulations." Compl. ¶¶ 46, 53. The Complaint fails to specify any characteristic of such a "reasonable and effective program or system," or to allege how such a system would have prevented the alleged reporting violations here, or to identify *any* specific respect in which SunSetter's actual systems are alleged to be deficient. Such allegations, "amount[ing] merely to an assertion that unspecified facts exist to conform to the legal blueprint," *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012), do not satisfy the government's burden.

Moreover, the conclusory allegation that SunSetter lacks "reasonable" and "effective" systems is undermined by the only facts alleged that are relevant to SunSetter's current CPSA

compliance—they show SunSetter's systems are working, not that they are unreasonable or ineffective. The Complaint alleges that, in October 2017, SunSetter voluntarily reported the alleged defect in its awning covers to the CPSC. Compl. ¶ 42. And, in August 2019, in coordination with the CPSC, SunSetter carried out a voluntary recall to provide customers with instructions on how safely to replace any installed bungee-tie downs with breakaway clips. *Id.* ¶ 45. The Complaint takes no issue with the substance of SunSetter's reporting or recall. Thus, the factual allegations of the Complaint show only that SunSetter has successfully and voluntarily complied with its CPSA obligations for the past five-and-a-half years.

*Spectrum Brands* is instructive in contrast. There, the Seventh Circuit affirmed a grant of injunctive relief after trial based on CPSA violations which included violations of reporting obligations. Spectrum was "a diversified consumer products company" distributing "more than 24 million individual products per year." *Spectrum Brands,* 924 F.3d at 340. The company received 1600 complaints, over four years (more than one a day), concerning the failure of handles on its coffee carafes, and associated injuries, without reporting to the CPSC. *Id.* at 342. Then, after reporting, it bungled a product recall, "due to gaps in its inventory-control procedures," by continuing to sell the defective coffee makers for a year after telling the CPSC they were recalled. *Id*.

SunSetter is not Spectrum. The nature of SunSetter's business and the alleged violations provide no reason to believe that SunSetter would face any special challenge in responding appropriately to a future product-safety issue. SunSetter manufactures and sells a limited, predictable product range that presents no unusual safety concerns. Compl. ¶¶ 2, 27–29. *Cf. Spectrum Brands,* 924 F.3d at 359 (noting special concerns arising from "the number of consumer products that Spectrum distributes"); *Zen Magnets*, 170 F. Supp. 3d at 1368 (discussing injunction

related to magnet toys that pose a threat of serious intestinal injury to small children). And, unlike Spectrum, SunSetter did not receive 1600 complaints of product failure or mishandle a recall. The Complaint alleges 14 customer complaints in five years (and 270,000 products) relating to a potential issue with the covers that could be replicated only under very specific conditions, as well as a successful recall in coordination with the CPSC. Compl. ¶¶ 27-28, 35, 42-43.

The government is not excused from the burden of alleging a plausible claim by pleading on "information and belief." *See Menard*, 689 F.3d at 44, 45 (explaining that "conclusory statements must rest on pleaded facts" and probing whether "anything beyond speculation supports" plaintiff's "information and belief" allegations). If a plaintiff has factual information making its belief plausible, those facts must be set out in the Complaint. *Id.*; *see Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018). The CPSC has been dealing with SunSetter on the subject matter of the Complaint since 2017, armed with extensive powers to investigate. *See, e.g.*, 15 U.S.C. § 2065(b). It has alleged no deficiency in SunSetter's recordkeeping or its responses to demands for information. If it had any such evidence, it is required to allege that evidence to proceed with its request for injunctive relief.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed; in the alternative, Count III should be dismissed; and the Court should order such other or further relief as it finds appropriate.

Dated: June 6, 2023                    Respectfully submitted,

                                       COOLEY LLP

                                       By: */s/ Shamis Beckley*
                                       Shamis Beckley, BBO No. 697425
                                       COOLEY LLP
                                       500 Boylston Street
                                       14th Floor
                                       Boston, MA 02116-3736
                                       Telephone: +1 617 937 2300
                                       Facsimile: +1 617 937-2400
                                       sbeckley@cooley.com

                                       Daniel Grooms (*admitted pro hac vice*)
                                       Matthew R. Howsare (*admitted pro hac vice*)
                                       Shawn N. Skolky (*admitted pro hac vice*)
                                       Cooley LLP
                                       1299 Pennsylvania Avenue, NW Suite 700
                                       Washington, DC 20004
                                       Telephone: +1 202 842 7800
                                       Facsimile: +1 202 842 7899
                                       dgrooms@cooley.com
                                       mhowsare@cooley.com
                                       sskolky@cooley.com

                                       Matthew Kutcher (*admitted pro hac vice*)
                                       Cooley LLP
                                       110 N. Wacker Drive Suite 4200
                                       Chicago, IL 60606
                                       Telephone: +1 312 881 6500
                                       Facsimile: +1 312 881 6598
                                       mkutcher@cooley.com

                                       Reed Smith (*admitted pro hac vice*)
                                       Cooley LLP
                                       55 Hudson Yards
                                       New York, NY 10001
                                       Telephone:  +1 212 479 6000
                                       Facsimile:  +1 212 479 6275
                                       reed.smith@cooley.com

                                       *Attorneys for Defendant*
                                       *SunSetter Products LP*

21

## **CERTIFICATE OF SERVICE**

I, Shamis Beckley, hereby certify that on this 6th day of June 2023, the foregoing notice, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing, and paper copies will be sent to any non-registered participants.

/s/*Shamis Beckley*
Shamis Beckley