**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-10744 (ADB) |
| | ) | |
| v. | ) | |
| | ) | |
| SUNSETTER PRODUCTS LP, | ) | |
| a Massachusetts Limited Partnership, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

   I.  Legal Framework ............................................................................................................ 2

   II. Facts ................................................................................................................................. 2

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ............................................................................................................................. 4

   I.  The United States' civil action in district court is constitutional. ................................ 4

        A.  SunSetter has failed to demonstrate any harm based on its separation-of-powers challenge. ...................................................................................................... 5

        B.  For-cause restrictions on the removal of officers of independent regulatory agencies generally have been regarded as lawful since the Supreme Court's 1935 decision in *Humphrey's Executor*. ................................................................ 8

   II. The United States has adequately stated a claim upon which the Court may grant relief... 12

        A.  Congress authorized the injunctive relief that the United States seeks. ................. 12

        B.  SunSetter's objections to the relief that the United States requests are premature. ...................................................................................................... 21

        C.  The United States has pled facts with sufficient specificity to state a claim for injunctive relief in Count III of the Complaint. ..................................................... 22

CONCLUSION .......................................................................................................................... 25

CERTIFICATE OF SERVICE

## **TABLE OF AUTHORITIES**

**Cases**

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
  732 F.3d 77 (1st Cir. 2013) ............................................................................. 4

*Agostini v. Felton*,
  521 U.S. 203 (1997) ...................................................................................... 12

*AMG Cap. Mgmt., LLC v. FTC*,
  141 S. Ct. 1341 (2021) .................................................................................. 15

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ......................................................................... 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 4

*Axon Enterprise, Inc. v. FTC*,
  143 S. Ct. 890 (2023)....................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 4

*Biden v. Texas*,
  142 S. Ct. 2528 (2022)................................................................................... 16

*Bontkowski v. Smith*,
  305 F.3d 757 (7th Cir. 2002) ........................................................................ 21

*Brown v. Board of Trustees*,
  891 F.2d 337 (1st Cir. 1989) ........................................................................ 21

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022) ........................................................................... 8

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
  4 F.4th 63 (1st Cir. 2021) ............................................................................... 4

*CFTC v. Hunt*,
  591 F.2d 1211 (7th Cir. 1979) ...................................................................... 23

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ........................................................................... 7

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021)........................................................................ 6, 7, 10, 11

*Consumers' Research. v. CPSC,*
    592 F. Supp. 3d 568 (E.D. Tex. 2022)................................................................ 12

*Copy Cop, Inc. v. Task Printing, Inc.,*
    908 F. Supp. 37 (D. Mass. 1995)........................................................ 14, 15, 16

*Figueroa v. Rivera,*
    147 F.3d 77 (1st Cir. 1998) ............................................................................. 12

*Free Enterprise Fund v. Public Co. Accounting Oversight Board,*
    561 U.S. 477 (2010) ............................................................................... 9, 10, 11

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) .......................................................................................... 9

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ........................................................................................ 15

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ...................................................................................... 8, 9

*In re Aiken Cnty.,*
    645 F.3d 428 (D.C. Cir. 2011)..................................................................... 9, 12

*LabMD, Inc. v. FTC,*
    894 F.3d 1221 (11th Cir. 2018) ...................................................................... 20

*Law Offs. of Crystal Moroney, P.C.,*
    63 F.4th 174 (2d Cir. 2023) .............................................................................. 7

*Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship,*
    347 F. Supp. 3d 61 (D. Mass. 2018).............................................................. 25

*Menard v. CSX Transp., Inc.,*
    698 F.3d 40 (1st Cir. 2012) ............................................................................ 25

*Morrison v. Olson,*
    487 U.S. 654 (1988) .................................................................................... 9, 11

*Myers v. United States,*
    272 U.S. 52 (1926) ............................................................................................ 5

*Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,*
    754 F.2d 404 (1st Cir. 1985) ..................................................................... 13, 14

*Porter v. Warner Holding Co.,*
    328 U.S. 395 (1946) ................................................................................... 13, 14

*Primerica Life Ins. Co. v. Bailey*,
2021 WL 927462 (D. Mass. Mar. 11, 2021) ...................................................................... 4, 25

*Rinsky v. Cushman & Wakefield, Inc.*,
918 F.3d 8 (1st Cir. 2019) ............................................................................................. 13

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*,
806 F. Supp. 2d 503 (D.P.R. 2011) ................................................................................ 21

*SEC v. Mgmt. Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975) .......................................................................................... 23

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020) .............................................................................................. 10, 11

*Sierra Club v. EPA*,
322 F.3d 718 (D.C. Cir. 2003) ....................................................................................... 12

*State Oil Co. v. Kahn*,
522 U.S. 3 (1997) ......................................................................................................... 12

*Tcherepnin v. Knight*,
389 U.S. 332 (1967) ...................................................................................................... 13

*United States v. Anaconda Co.*,
445 F. Supp. 486 (D.D.C. 1977) .................................................................................... 13

*United States v. Blue Ribbon Smoked Fish, Inc.*,
179 F. Supp. 2d 30 (E.D.N.Y. 2001) .............................................................................. 18

*United States v. Dianovin Pharms., Inc.*,
475 F.2d 100 (1st Cir. 1973) ......................................................................................... 22

*United States v. Hakim*,
462 F. Supp. 3d 418 (S.D.N.Y. 2020) ............................................................................ 20

*United States v. Richlyn Lab'ys, Inc.*,
822 F. Supp. 268 (E.D. Pa. 1993) .................................................................................. 18

*United States v. Scotty's, Inc.*,
173 F. Supp. 3d 549 (E.D. Mich. 2016) ..................................................................... 18, 19

*United States v. Spectrum Brands, Inc.*,
218 F. Supp. 3d 794 (W.D. Wis. 2016) ........................................................................... 22

*United States v. Spectrum Brands, Inc.*,
924 F.3d 337 (7th Cir. 2019) ......................................................................................... 17

*United States v. Spectrum Brands*,
  2018 WL 1704773 (W.D. Wis. Apr. 9, 2018) ............................................................ 17

*United States v. St. Regis Paper Co.*,
  355 F.2d 688 (1966) ..................................................................................................... 5

*United States v. Toys "R" Us*,
  754 F. Supp. 1050 (D.N.J. 1991) ................................................................................ 19

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) .................................................................................................... 22

*United States v. Zen Magnets, LLC*,
  104 F. Supp. 3d 1277 (D. Colo. 2015) ................................................................. 14, 23

*United States v. Zen Magnets, LLC*,
  170 F. Supp. 3d 1365 (D. Colo. 2016) ................................................................. 19, 20

*Mistretta v. United States*,
  488 U.S. 361 (1989) ...................................................................................................... 9

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan*,
  773 F.3d 1 (1st Cir. 2014) .......................................................................................... 16

*Wiener v. United States*,
  357 U.S. 349 (1958) ...................................................................................................... 9

*Williams v. Jones*,
  11 F.3d 247 (1st Cir. 1993) ........................................................................................ 14

**Statutes**

15 U.S.C. §

41 ...................................................................................................................................... 9

45 .................................................................................................................................... 15

53(b) ............................................................................................................................... 15

57b(b) ............................................................................................................................. 15

2051(b)(1) ...................................................................................................................... 13

2056a(b)(1) ..................................................................................................................... 16

2064(b) ........................................................................................................ 12, 13, 17, 25

2064(b)(3) ............................................................................................................ 2, 17, 19

2064(b)(4) ........................................................................................................ 17, 19

2065(b) .................................................................................................................... 16

2068(a)(4) ..................................................................................... 2, 12, 13, 23

2069(a)(1) ................................................................................................................. 2

2071(a) ...................................................................................................................... 1

2071(a)(1) .......................................................................................................... 2, 15

2076(b)(7) ................................................................................................................. 2

2076(b)(7)(A) ........................................................................................................ 5

21 U.S.C. §

331(a)-(ggg) ........................................................................................................ 19

332(a) ................................................................................................................ 18, 19

28 U.S.C. §

1355(a) .................................................................................................................. 2

**Regulations**

16 C.F.R. § 1115.14(e) ....................................................................................... 2

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 3, 4, 22

Fed. R. Civ. P. 65 .............................................................................................. 18

**Treatise**

5 Fed. Prac. & Proc. Civ. § 1255 ...................................................................... 21, 22

## INTRODUCTION

Pursuant to Local Rule 7.1(b)(2), Plaintiff United States of America (the "United States") submits this opposition to Defendant SunSetter Products LP's ("SunSetter's") motion to dismiss. ECF No. 15.[1]

The protections of Consumer Product Safety Commission ("CPSC" or "Commission") Commissioners from at-will removal do not provide any basis for the dismissal of the Complaint. The Attorney General's decision to bring this action satisfies any constitutionally mandated Presidential supervision, and the Commissioners' for-cause removal protections are constitutional under binding Supreme Court precedent. And, in any event, SunSetter has failed to demonstrate any prejudice from the Commissioners' removal restrictions and has not even suggested that the President would have removed the Commissioners (the majority of whom he nominated) if he were able to, or that the statutory limitations on removal are connected to any CPSC actions taken in connection with this enforcement proceeding. Without that required showing of prejudice, SunSetter is not entitled to dismissal of the Complaint.

The United States brings this action pursuant to the statutory authority to seek civil penalties and injunctive relief to "restrain any violation" of the prohibited acts of the Consumer Product Safety Act ("CPSA"). *See* 15 U.S.C. §§ 2068, 2069 and 2071. The Complaint seeks only statutory remedies for violations of the CPSA, and this Court has explicit statutory authority to order the requested relief. SunSetter's history of violating the CPSA's reporting requirements and the character of its violations support a reasonable likelihood of recurrence. SunSetter's request to dismiss Count III based on its contention that the form of injunctive relief the United States seeks is not authorized by law ignores this Court's expansive equitable powers to fashion

---

[1]    The Court granted the United States' requests for an extension of time and its request for leave to file excess pages. ECF Nos. 23, 25.

an injunction that "[r]estrain[s] any violation of section 2068." 15 U.S.C. § 2071(a). SunSetter's request is also premature at the pleading stage. The Court should deny SunSetter's motion to dismiss in its entirety.

## BACKGROUND

### I.  Legal Framework

Under the CPSA, manufacturers, distributors, and retailers of consumer products are required to "immediately" inform the CPSC when they obtain information that reasonably supports the conclusion that their consumer product contains a defect which could create a substantial product hazard, 15 U.S.C. § 2064(b)(3), or creates an unreasonable risk of serious injury or death, *id*. § 2064(b)(4). Reporting must be immediate, defined by regulation as within twenty-four hours. 16 C.F.R. § 1115.14(e). Failing to furnish such information to the CPSC is a prohibited act, 15 U.S.C. § 2068(a)(4), and Congress conferred upon U.S. district courts the authority to restrain such violations, 15 U.S.C. § 2071(a)(1), and to recover civil penalties for them, 15 U.S.C. § 2069(a)(1), 28 U.S.C. § 1355(a). Congress conferred upon the CPSC the power to refer a civil action for civil penalties and injunctive relief to the Attorney General. 15 U.S.C. § 2076(b)(7).

### II.  Facts

The United States alleges that, in March 2012, SunSetter obtained information that reasonably supported the conclusion that the vinyl protective coverings with bungee tie-downs ("the Cover") used with three of its retractable awning models contained a defect which could create a substantial product hazard or an unreasonable risk of serious injury or death. Compl., ECF No. 1 ¶ 30. Rather than immediately report the information to the CPSC, as it was required to do, SunSetter continued to withhold numerous reports from consumers complaining that they

were put at risk of serious injury or were injured when attempting to remove the Cover from a retracted SunSetter awning. *Id.* ¶¶ 30-34, 38, 40.  Specifically, if a consumer using a remote control device has inadvertently activated a retracted awning while the Cover is secured over it, and the consumer then removes the bungee tie-downs from the Cover, the awning can open suddenly and unexpectedly and with such force that it can knock over anyone standing in the awning's path, particularly while on a ladder or stool, and put him or her at risk of serious injury or death. *Id.* ¶¶ 3, 30-34, 38, 40, 41, 45.  In addition to the consumer reports, SunSetter knew about the hazard through its own simulation testing that it conducted in 2015. *Id.* ¶ 35.  Yet, SunSetter said *nothing* to the CPSC as consumers continued to be put at risk.  SunSetter only reported to the CPSC on October 16, 2017, after SunSetter received notice of a lawsuit filed by the family of a consumer who died from injuries sustained in April 2017 when his SunSetter retractable awning opened suddenly and unexpectedly as he removed the Cover, knocking him off a ladder and over the side of a second-floor balcony. *Id.* ¶¶ 41-42.

The United States brought this civil action seeking statutory remedies for SunSetter's violations of the CPSA following SunSetter's unlawful delay in reporting to the CPSC information in its possession about a defect and hazard in its consumer product.  SunSetter moved to dismiss, under Fed. R. Civ. P. 12(b)(6), advancing two theories.  First, SunSetter argues that by bringing this action, the United States is unconstitutionally enforcing the CPSA. *See* Def's Mem. of Law in Supp. of Its Mot.to Dismiss (June 6, 2023), ECF No. 16 at 11-17.[2] Second, SunSetter argues that the injunctive relief that the United States requests is outside of

---

[2]      In citations to specific pages within SunSetter's memorandum, the United States will use the page number that appears in the heading imprinted by the Court's electronic case filing ("ECF") system.

this Court's equitable power under the CPSA, *id*. at 17-22, and that the United States has not sufficiently pled its claim for injunctive relief, *id*. at 22-25.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the Complaint, taken as true by the court, and with all inferences drawn in the pleader's favor, must state a "plausible" case for relief. *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69–70 (1st Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009)). "[D]etailed factual allegations" are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The plausibility standard invites a two-step pavane." *Primerica Life Ins. Co. v. Bailey*, No. 20-CV-10743-ADB, 2021 WL 927462, at *2 (D. Mass. Mar. 11, 2021) (Burroughs, J.) (quoting *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013)). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id*. (citation omitted). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (citation omitted).

## ARGUMENT

### I.    The United States' civil action in district court is constitutional.

The Attorney General initiated this civil action on behalf of the CPSC. SunSetter mistakenly contends that the Complaint should be dismissed because the Commissioners' "for-cause" removal protections violate separation of powers and, therefore, it is "subject to enforcement proceedings by an agency unconstitutionally insulated from the President's removal power." ECF No. 16 at 14. But those removal protections are not relevant here, where the Attorney General, who is directly accountable to the President, has chosen to bring this action. Moreover, the Commissioners' removal restrictions are constitutional under Supreme Court

precedent, and, in any case, SunSetter has failed to demonstrate any entitlement to dismissal of the Complaint because it has failed to demonstrate any prejudice from those removal restrictions.

> **A.      SunSetter has failed to demonstrate any harm based on its separation-of-powers challenge.**

The Complaint was filed by the Department of Justice—an executive department led by the Attorney General who is subject to removal at will by the President.  Indeed, prior to initiating or prosecuting any civil action to enforce the CPSA, the CPSC must "make[] a written request to the Attorney General for representation in such civil action" and may only proceed "through its own legal representative and in the name of the Commission" if the Attorney General fails to notify the Commission within forty-five days that it will represent the Commission in the action.  15 U.S.C. § 2076(b)(7)(A).  Where the Department of Justice agrees to represent the Commission, it does so after an *independent* determination by the Attorney General to initiate suit.  *See* S. Rep. No. 94-251, at 10 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 993, 1002 (explaining that under this provision, "the Attorney General c[an] *choose* to represent the Commission in the court action") (emphasis added)); *cf. United States v. St. Regis Paper Co.*, 355 F.2d 688, 694 (1966) (explaining in the analogous context of Section 16 of the Federal Trade Commission ("FTC") Act that "the Attorney General has a kind of veto power in that he can refuse to prosecute cases certified to him [by the FTC] when, in reliance on his own legal expertise, he considers the evidence insufficient to warrant prosecution").  And the power of at-will removal means that, for constitutional purposes, the Attorney General is "the President's *alter ego*."  *Myers v. United States*, 272 U.S. 52, 132-33 (1926). Plainly then, this civil enforcement action against SunSetter is "subject to the executive supervision the Constitution requires."  *See* ECF No. 16 at 15.

For much the same reason, SunSetter cannot show that it has been or will be prejudiced by the CPSC Commissioners' removal restrictions in any way that would be connected with the initiation or prosecution of this suit.  And as the Supreme Court and the courts of appeals have explained, parties contesting statutory removal restrictions are not entitled to relief unless they demonstrate prejudice from those removal restrictions.

In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that a statute purporting to unconstitutionally limit the President's authority to remove an officer "is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)."  *Id.* at 1788-89. So long as the officer in question was "properly appointed," "there is no reason to regard" the officer's actions as "void *ab initio*."  *Id.* at 1787 (emphasis omitted); *accord id.* at 1801 (Kagan, J., concurring in part and concurring in the judgment); *id*. at 1792 (Thomas, J., concurring).  The Court thus distinguished removal cases from other separation-of-powers cases that involve "a Government actor's exercise of power that the actor did not lawfully possess" and explained that "the unlawfulness of the removal provision does not strip the [Federal Housing Finance Agency] Director of the power to undertake the other responsibilities of his office."  *Id.* at 1788 & n.23. *Collins*, therefore, instructs that relief based on an unconstitutional removal restriction requires a litigant to make an affirmative showing that the restriction "inflict[ed] compensable harm."[3]  *Id.*

_____

[3]       The Court in *Collins* identified two ways in which a litigant could make this showing.  *Id.* at 1789.  First, a litigant could show harm if "the President had attempted to remove [an officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal."  *Id.*  In such a case, "that official is not lawfully occupying his office and would likely be acting without authority," *id.* at 1793 n.6 (Thomas, J., concurring).  Second, a litigant could establish harm if "the President had made a public statement expressing displeasure with actions taken by [an officer] and had asserted that he would remove the [officer] if the statute did not stand in the way."  *Id.* at 1789 (majority opinion).  In that circumstance, an officer removable at will "might have altered his behavior in a way that would have benefited" the litigant.  *Id.*

at 1789.  But SunSetter makes no attempt to make such a showing.  Nor could it—because this

suit is brought by the Department of Justice which is subject to direct presidential oversight.[4]  *Cf.*

*id*. at 1789 (noting the argument that the Federal Housing Finance Agency ("FHFA") Director's

unconstitutional removal restriction did not cause harm "because FHFA's counterparty to the

[challenged agency action] was Treasury—an executive department led by a Secretary subject to

removal at will by the President"—but remanding the issue to be decided by the lower courts in

the first instance).

SunSetter argues that the *Collins* framework does not apply here because it applies only

to "retrospective relief."  *See* ECF No. 16 at 14-17.  But there is no logical reason to distinguish

between prospective and retrospective remedies.[5]  Whether SunSetter "seeks retrospective or

prospective relief," it must still "show a connection between the President's frustrated desire to

remove the actor and the agency action complained of."  *Cmty. Fin. Servs. Ass'n of Am. v.*

*CFPB*, 51 F.4th 616, 631-32 (5th Cir. 2022) (explaining that "[w]ithout this showing, [litigants]

could put themselves in a better place than otherwise warranted, by challenging decisions either

with which the President agreed, or of which he had no awareness at all"), *denying cert. to*

*review that holding*, 143 S. Ct. 981 (2023), *granting cert. on other grounds*, 143 S. Ct. 978;

*CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 179-81 (2d Cir. 2023) (applying

---

[4]     A further difficulty for SunSetter under *Collins* is that three of the CPSC's
Commissioners were selected by President Biden.  *See* The White House, *President Biden*
*Announces Six Key Nominations* (July 2, 2021), https://perma.cc/JJ4Y-RLSJ; 167 Cong. Rec.
S4862 (2021) (Chair Hoehn-Saric and Commissioner Boyle); The White House, *President Biden*
*Announces 11 Key Nominations* (July 13, 2021), https://perma.cc/2FM7-AFRB; 167 Cong. Rec.
S4935 (2021) (Commissioner Trumka).  There is no indication that the President is displeased
with any of their decisions, much less displeasure that might warrant removal.

[5]     The only reason why *Collins* "articulated its remedial analysis in terms of retrospective
relief" was that "the challengers' claims for prospective relief were moot."  *Cmty. Fin. Servs.*
*Ass'n of Am. v. CFPB*, 51 F.4th 616, 631 n.5 (5th Cir. 2022).

*Collins* to a petition to enforce a civil investigative demand and explaining that "the Supreme Court's reasoning that an officer's actions are valid so long as she was validly appointed applies with equal force regardless of the relief sought"); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) (explaining that "*Collins* thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party" and that the distinction between prospective and retrospective relief "does not matter"), *rev'd on other grounds*, 143 S. Ct. 1317 (2023) (per curiam).

SunSetter's invocation of *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), is misplaced. The narrow question decided in *Axon* was whether district courts have jurisdiction to hear certain constitutional challenges brought by respondents in ongoing agency administrative enforcement proceedings. *Id*. at 900. Here, of course, SunSetter is not subject to an administrative proceeding, but rather is proceeding in district court already—the exact relief that the respondents in *Axon* sought. And in any event, *Axon* made clear that it was not addressing the merits of respondents' separation-of-powers challenges and was only "decid[ing] where they may be heard." *Id.* at 897. Indeed, nothing in *Axon* disturbs the *Collins* analysis.[6]

    **B.**    **For-cause restrictions on the removal of officers of independent regulatory agencies generally have been regarded as lawful since the Supreme Court's 1935 decision in *Humphrey's Executor*.**

In any case, the Commission is lawfully structured. Since Congress created the Interstate Commerce Commission in 1887, it has repeatedly accorded for-cause tenure protections to officers of multi-member federal agencies. *See* Act of Feb. 4, 1887, ch. 104, § 11, 24 Stat. 379, 383. In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court upheld

---

[6]    Under *Axon*, a litigant may bring suit in district court during the pendency of an administrative enforcement proceeding, alleging an irreparable injury caused by unconstitutional removal restrictions. But even in such a case, under *Collins*, such a litigant must still demonstrate actual prejudice from those restrictions.

the constitutionality of such restrictions for members of the FTC, who could only be removed for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 619-20 (quoting 15 U.S.C. § 41). The Court "found it 'plain' that the Constitution did not give the President 'illimitable power of removal' over the officers of independent agencies." *see also Morrison v. Olson*, 487 U.S. 654, 687-88 (1988) (quoting *Humphrey's Executor*, 295 U.S. at 629). "Since [the Court's] 1935 decision in *Humphrey's Executor* . . . , removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the [FTC], the Interstate Commerce Commission, and the [CPSC]." *Id.* at 724-25 (Scalia, J., dissenting) (citations omitted). Accordingly, "various federal agencies,"[7] including the CPSC, are led by multi-member boards "covered by 'good cause' removal restrictions," and those agencies may "exercise civil enforcement powers." *Id.* at 692 n.31 (majority opinion) (citing, for example, 15 U.S.C. §§ 2061, 2071, 2076(b)(7)(A), which "giv[e] the [CPSC] the authority to obtain injunctions and apply for seizure of hazardous products").

   *Humphrey's Executor* remains good law. In *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), the Court explained that under *Humphrey's Executor*, Congress can, "under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Id.* at 483. The Court, however, invalidated the good-cause removal

---

[7]     Other such agencies include the Federal Communications Commission, *see Freytag v. Comm'r*, 501 U.S. 868, 916, 920 (1991) (Scalia, J., concurring), the Nuclear Regulatory Commission ("NRC"), the National Labor Relations Board, *In re Aiken Cnty.*, 645 F.3d 428, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring), and the U.S. Sentencing Commission, *Mistretta v. United States*, 488 U.S. 361, 410-11 (1989). Removal restrictions have also been understood to be constitutional under *Humphrey's Executor* for multi-member executive tribunals such as the Tax Court, *Freytag*, 501 U.S. at 920 (Scalia, J., concurring), the Court of Appeals for the Armed Forces, *Morrison*, 487 U.S. at 725 (Scalia, J., dissenting), and the War Claims Commission, *Wiener v. United States*, 357 U.S. 349 (1958).

restrictions for certain inferior officers who could only be removed by the Securities and Exchange Commission ("SEC") Commissioners because those inferior officers had "two levels of protection from removal." *Id.* at 496, 514.  The parties had "agree[d]" that the SEC Commissioners cannot "be removed by the President except under the *Humphrey's Executor* standard," and the Court "decide[d] the case with that understanding." *Id.* at 487.  The Court cured the constitutional infirmity by severing the removal restrictions on the inferior officer so that the SEC Commissioners—who were themselves assumed to still possess removal protections—were now "fully responsible" for the inferior officers, who are "no less subject than the Commission's own functions to Presidential oversight," and thus constitutional. *Id.* at 508-10.

In *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the Supreme Court likewise recognized that *Humphrey's Executor* permits Congress to establish removal restrictions for multi-member regulatory agencies.  The Court specifically identified the CPSC as "a traditional independent agency headed by a multimember board or commission," in contrast to the Consumer Financial Protection Bureau ("CFPB") which is headed by a single director. *Id.* at 2192-93.  The Court held that because the CFPB is "led by a single Director" rather than "a board with multiple members," the President must have the ability to remove the Director at will and thus severed the Director's removal restrictions from the remainder of the Dodd-Frank Act as unconstitutional. *Id.* at 2191-92, 2210-11.  The Court also explained that Congress may "pursu[e] alternative responses to the problem—for example, converting the CFPB into a multimember agency." *Id.* at 2211.  Under SunSetter's theory, however, that "alternative response[]" would be unconstitutional.

The Supreme Court applied *Seila Law* in *Collins*, where the Court invalidated removal restrictions for the single Director who led the FHFA.  141 S. Ct. at 1783-84.  The Court in *Collins* rejected the suggestion that the removal restrictions for the FHFA Director might be permissible because that agency wielded different powers than the CFPB.  *Id.* at 1784-85.  It stressed that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry."  *Id.* at 1785.  The Court also rejected a historical analogy to removal restrictions for members of an earlier agency because that earlier agency was "led by a multi-member Commission."  *Id.* at 1785 n.19.

SunSetter contends that *Humphrey's Executor* does not apply here because the CPSC Commissioners exercise "substantial executive power."  *See* ECF No. 16 at 13.  That contention is irreconcilable with: (1) *Morrison*'s observation that the CPSC "exercise[d] civil enforcement powers" and was constitutionally "covered by 'good cause' removal restrictions," 487 U.S. at 692, n.31; (2) *Seila Law*'s suggestion that Congress could lawfully reconstitute the CFPB as a multimember commission, 140 S. Ct. at 2211; (3) *Free Enterprise Fund*'s recognition that the SEC Commissioners are adequately subject to presidential oversight, despite not being subject to at-will removal, 561 U.S. at 509; and (4) *Collins*'s recognition that "the constitutionality of removal restrictions" does not hinge on the nature of the precise power recognized, and that such restrictions are particularly permissible for multi-member agencies, 141 S. Ct. at 1785 & n.19.  And SunSetter's theory is incompatible with *Humphrey's Executor* itself because the FTC in 1935 also had what SunSetter would call "substantial executive power."  *See* Pub. L. No. 63-203, §§ 5, 6(g), 38 Stat. 717, 719-20, 722 (1914) (authorizing the FTC to issue cease-and-desist orders, to bring enforcement actions, and to issue regulations).

At bottom, "*Humphrey's Executor* is an entrenched Supreme Court precedent, protected by stare decisis," which applies to traditional multi-member regulatory agencies such as the CPSC.  *Aiken Cnty.*, 645 F.3d at 446 (Kavanaugh, J., concurring) (discussing the NRC).  And even in cases where a precedent of the Supreme Court "appears weakened by pronouncements in its subsequent decisions," the Supreme Court "has admonished the lower federal courts to follow its directly applicable precedent" and "to leave to the [Supreme] [C]ourt 'the prerogative of overruling its own decisions.'" *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)); *accord Sierra Club v. EPA*, 322 F.3d 718, 725 (D.C. Cir. 2003) ("Whether [one Supreme Court case] 'rests on reasons rejected by' [another] is a matter for the Supreme Court, not us." (alteration omitted)); *see also State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) (commending the court of appeals for applying stare decisis because "it is [the Supreme Court's] prerogative alone to overrule one of its precedents").  Thus, *Humphrey's Executor* controls.[8]

## II. The United States has adequately stated a claim upon which the Court may grant relief.

### A. Congress authorized the injunctive relief that the United States seeks.

Section 2071(a)(1) of Title 15 of the United States Code provides that the CPSC and the Attorney General may bring actions, and the Court may issue orders, to "[r]estrain any violation

---

[8]    SunSetter relies on *Consumers' Research. v. CPSC*, 592 F. Supp. 3d 568, 580 (E.D. Tex. 2022), *appeal docketed*, No. 22-40328 (5th Cir. May 18, 2022), to support the proposition that the CPSC's structure violates the constitutional separation of powers because of the Commissioners' for-cause protections.  *See* ECF No. 16 at 6, 13.  The United States' appeal from that district court's decision is pending.  *Consumers' Research* is inapposite here, considering that it was not a civil action by the Attorney General to enforce the CPSA, but rather an action for declaratory relief that the CPSC structure is unconstitutional, and the district court in that case overstepped its authority by declaring that the CPSC's statutory removal protections are unconstitutional, in contravention of longstanding Supreme Court precedent in *Humphrey's Executor*.  And, in any case, the court in *Consumers' Research* did not purport to overturn or invalidate any actions taken by the Commission.  *See* 592 F. Supp. 3d at 589-91.

of [15 U.S.C. § 2068]."  Section 2068(a)(4) prohibits any person's noncompliance with the

CPSA's requirement to furnish information required under 15 U.S.C. § 2064(b) by immediately

informing the CPSC.  15 U.S.C. § 2068(a)(4) (designating failure to furnish information required

by § 2064(b) as an unlawful act).

  The CPSA's injunctive provisions are broadly worded to allow restraint of any violation

of § 2068 and should be construed accordingly.  Neither § 2071 nor any other provision of the

CPSA restricts the form of a permissible injunction authorized to "restrain any violation" of

§ 2068.  *See generally* 15 U.S.C. §§ 2051-89.  Given that the CPSA is a remedial public health

and safety statute, *see* 15 U.S.C. § 2051(b)(1) (stating that its purposes among others is "to

protect the public against unreasonable risks of injury associated with consumer products"), the

Court should construe it broadly to effectuate its purpose of protecting the public against

dangerous consumer products, *see*, *e.g.*, *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("[W]e

are guided by the familiar canon of statutory construction that remedial legislation should be

construed broadly to effectuate its purposes."); *Porter v. Warner Holding Co*., 328 U.S. 395, 398

(1946) (holding that in a proceeding by the government to enjoin acts and practices made illegal

by the Emergency Price Control Act and to enforce compliance with the act, the public interest is

involved, and the court's equitable powers assume an even broader and more flexible character

than when only a private controversy is at stake); *Rinsky v. Cushman & Wakefield, Inc*., 918 F.3d

8, 20 (1st Cir. 2019) (noting that state workplace anti-discrimination law must be "construed

liberally for the accomplishment of the uniquely broad and remedial purposes thereof"); *Cia.*

*Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 428 (1st Cir. 1985) ("When

Congress uses broad generalized language in a remedial statute, and that language is not

contravened by authoritative legislative history, a court should interpret the provision generously

so as to effectuate the important congressional goals."); *United States v. Anaconda Co*., 445 F.

Supp. 486, 494 (D.D.C. 1977) (observing that remedial safety legislation such as the CPSA

should be broadly construed to effectuate its purpose).

SunSetter contends that because § 2071(a)(1) does not specifically mention relief

involving systems and programs for § 2064(b) reporting, the Court may not restrain a violation

by requiring SunSetter to operate a compliance system or program, ECF No. 16 at 17-22.  A

court possesses inherent powers of equity, however, regardless of whether equitable remedies are

expressly authorized under the statute.  *Cia. Petrolera Caribe*, 754 F.2d at 428 (citation omitted);

*United States v. Zen Magnets, LLC*, 104 F. Supp. 3d 1277, 1284 (D. Colo. 2015) (citing the

court's authority under the CPSA to order injunctive relief and enjoining the defendant in that

case from selling specified products and ordering it to segregate and quarantine the dangerous

products in commerce and in its inventory in a timely manner).  This is generally true even when

the injunctive remedy is congressional in origin.  *Williams v. Jones*, 11 F.3d 247, 256 (1st Cir.

1993) (citing cases).  To hold Congress to have restricted these powers, a "clear and valid

legislative command" must be identified.  *Cia. Petrolera Caribe,* 754 F.2d at 428 (citation and

internal quotation marks omitted).  Even in the context of congressionally created injunctive

remedies, "[u]nless a statute in so many words, or by a necessary and inescapable inference,

restricts the court's jurisdiction in equity, the *full scope* of that jurisdiction is to be recognized

and applied."  *Porter*, 328 U.S. at 398 (emphasis added); *see also Williams*, 11 F.3d at 256

(citing *Porter*, 328 U.S. at 398); *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 48 (D.

Mass. 1995) (same).

SunSetter has not identified any clear legislative command in the CPSA, the statute under

which Congress authorized this action, that would foreclose the Court's ability to grant the

injunctive relief that the United States requests.  While SunSetter correctly observes that there exists no "universal rule of interpretation" of statutes through which Congress conferred upon courts the authority to fashion and issue injunctive relief, and that each statute must be evaluated by its own terms, *see* ECF No. 16 at 18, SunSetter relies solely upon an interpretation of another statute (the FTC Act), that is not relevant here, *id*. (citing *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1347-50 (2021)).  In *AMG* the Supreme Court resolved whether the words, "permanent injunction," in the provision of the FTC Act authorizing the FTC to bring a civil action to enforce the FTC Act's prohibitions on unfair or deceptive acts and practices, 15 U.S.C. § 53(b), authorized the FTC to seek, or courts to award in such FTC actions, equitable monetary relief, such as restitution and disgorgement, when doing so would effectively bypass the scheme that Congress established for the FTC to seek monetary relief by invoking administrative procedures and obtaining a cease-and-desist order, 15 U.S.C. § 45, and exercising a redress provision, 15 U.S.C. § 57b(b).  *AMG*, 141 S. Ct. at 1347-48.  In the instant action, in contrast, the Attorney General, seeks injunctive relief pursuant to 15 U.S.C. § 2071(a)(1), a provision in the CPSA that explicitly authorizes the Attorney General to seek, and the Court to order, injunctive relief, without placing any restriction on the form of such relief and where ordering the relief that the United States requests would not eviscerate another section of the CPSA.

Under SunSetter's narrow reading of 15 U.S.C. § 2071(a)(1), the Court would have no authority to tailor specific injunctive remedies, even to restrain presently occurring violations, because the statute does not specify any particular form of injunctive relief.  No portion of the statute or legislative history of the CPSA favors such a narrow construction.  Rather than limit possible relief, § 2071(a)(1) allows courts maximum flexibility to order injunctive relief to suit the circumstances of the particular case. *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The

essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan*, 773 F.3d 1, 12 (1st Cir. 2014) ("A hallmark of equity is the broad flexibility that is available to the chancellor in the fashioning of remedies."); *Copy Cop*, 908 F. Supp. at 48 (observing that courts have broad discretion to fashion an injunction to suit the circumstances in the particular case).

SunSetter then argues that because Congress authorizes the CPSC to promulgate, through rulemaking, internal record keeping and reporting requirements, and the CPSC has not done so, an injunction requiring SunSetter to establish internal recordkeeping and monitoring systems would be "inconsistent with Congress's express intent that the CPSC promulgate rules of general applicability to define internal recordkeeping and reporting obligations, which the CPSC would then be authorized to enforce in judicial proceedings under § 2071."  ECF No. 16 at 19 (citing 15 U.S.C. § 2065(b)).  Nothing in the language of § 2065, however, requires the CPSC to promulgate internal record keeping and reporting requirements.  *See* 15 U.S.C. § 2065(b) (providing that "every . . .  manufacturer . . . of a consumer product shall establish and maintain such records, make such reports, and provide such information as the Commission *may*, by rule, reasonably require for the purposes of implementing this chapter") (emphasis added). Congress's use of the word "may" does not just suggest discretion, it "clearly connotes" it. *Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022).  If Congress intended § 2065 to operate as a mandate that the CPSC promulgate internal record keeping and reporting requirements to enforce § 2071, it would not have used the unambiguous, express term "may."  Where Congress intended to require the CPSC to promulgate rulemakings, it has expressly said so.  *See*, *e.g.*,

15 U.S.C. § 2056a(b)(1) (requiring the CPSC to promulgate consumer product safety standards for durable infant or toddler products); *id*. § 2056b(b)(2) (requiring the same for children's toys). That the CPSC has not promulgated such a rule has no bearing on the Court's authority to fashion and order appropriate relief to restrain SunSetter's violations.

In fact, courts routinely have issued injunctions restraining manufacturers from violating the CPSA's reporting requirements in 15 U.S.C. § 2064(b).  For example, after finding a manufacturer liable for violations of the CPSA's reporting requirements in § 2064(b), another district court issued an injunction that included specific requirements to "maintain sufficient systems, programs, and internal controls to ensure compliance with the CPSA and the regulations enforced by the CPSC including, without limitation, the . . . reporting requirement under 15 U.S.C. §§ 2064(b)(3)-(4)."  *United States v. Spectrum Brands*, No. 15-CV-371-WMC, 2018 WL 1704773, at *2 (W.D. Wis. Apr. 9, 2018), *aff'd sub nom*. *United States v. Spectrum Brands, Inc*., 924 F.3d 337 (7th Cir. 2019).[9]  The injunctive relief ordered in *Spectrum Brands* is consistent with a long line of judgments by consent decree in civil actions under § 2071(a) arising out of violations of the information-reporting requirement in § 2064(b).[10]

---

[9]     The *Spectrum Brands* injunction included a requirement that the company maintain a position of a "Senior Director, Global Quality" or equivalent with the authority to ensure future product quality and safety, regularly track product safety information, including product return rates, call center data, and product ratings by consumers, and document calls and written communications regarding potential and actual incidents and injury information.  2018 WL 1704773, at *2.  The injunction also required the company to retain, at its own expense, an independent expert to assist in reviewing and recommending changes, if necessary, to the company's comprehensive safety program for CPSA compliance, with particular emphasis on compliance with the section 2064(b) reporting requirement.  *Id*. at *3.

[10]     *See United States v. Walter Kidde Portable Equip.*, No. 1:20-cv-1172 (M.D.N.C. Jan. 4, 2021), Consent Decree of Civil Penalty & Perm. Inj., ECF No. 3 at 4-7 (ordering the defendant in that case to: operate under a system of internal controls and procedures designed to ensure that information required by law to be reported to the CPSC is recorded, processed, and reported to the CPSC in accordance with applicable law and prompt disclosure is made to the defendant's

SunSetter points to injunctions that courts have issued pursuant to the Federal Food Drug

and Cosmetic Act ("FDCA"), 21 U.S.C. § 332(a), which, it contends, were "pursuant to statutes

and regulations that directly and specifically regulate manufacturers' operations."  ECF No. 16 at

20 (citing *United States v. Blue Ribbon Smoked Fish, Inc*., 179 F. Supp. 2d 30, 50-51 (E.D.N.Y.

management of any known material deficiencies or material weaknesses in the design or operation of such internal controls; submit documentation to the CPSC; provide a copy of the consent decree to certain individuals; annually certify the program; and pay liquidated damages if at any time the defendant fails to comply with the decree); *United States v. Michaels Stores, Inc*., No. 3:15-cv-1203 (N.D. Tex. Feb. 9, 2018), Consent Decree & Perm. Inj., ECF No. 132 at 4-5 (ordering the defendants in that case to operate a compliance program that contains enumerated elements, submit documentation to the CPSC, and provide copies of the consent decree to certain individuals); *United States v. Goodman Co., L.P.,* No. 4:16-cv-2720 (S.D. Tex. Sept. 12, 2016), Consent Decree of Civil Penalty & Perm. Inj., ECF No. 6 at 4-5 (ordering defendant to maintain a compliance program, provide documentation to the CPSC, and pay liquidated damages if at any time the defendant fails to comply with the decree); *United States v. Black & Decker, Inc*., No. 1:15-cv-1239 (D. Md. May 13, 2015), Consent Decree of Civil Penalty & Perm. Inj., ECF No. 2 at 4-5 (ordering defendant to continue to maintain a compliance program, implement internal systems and controls, provide documentation to the CPSC, and pay liquidated damages if at any time the defendant fails to comply with the decree); *United States v. Gerber Legendary Blades*, No. 3:14-cv-2061 (D. Or. Jan. 6, 2015), Consent Decree of Civil Penalty & Perm. Inj., ECF No. 5 at 3-5, (ordering defendant to continue to maintain a compliance program, implement internal systems and controls, provide documentation to the CPSC, and pay liquidated damages if at any time the defendant fails to comply with certain provisions of the decree); *United States v. Toys Distrib., Inc*., No. 2:14-cv-1364 (C. D. Cal. June 10, 2014), Consent Decree of Perm. Inj. as to Toys Distribution, Inc., Lan My Lam, & Loan Tuyet Thai, ECF No. 27 at 6, 16-17 (ordering the defendant to hire a product-safety coordinator and to pay liquidated damages if at any time the defendant fails to comply with material provisions of the decree); *United States v. Electrolux Home Products, Inc.*, No. 1:14-cv-117 (S. D. Ga. May 14, 2014), Consent Decree of Civ. Penalty & Perm. Inj., ECF No. 3 at 4-5 (ordering defendant to maintain a compliance program, maintain and enforce a system of internal controls and procedures designed to ensure compliance with requirements to report information to the CPSC, and provide documentation to the CPSC); *United States v. Brooklyn Sleep Products, Inc*., No. 1:10-cv-2980 (E.D.N.Y. Nov. 4, 2011), Default J. Pursuant to Fed. R. Civ. P. 55 & Order for Perm. Inj., ECF No. 39 at 6 (requiring the defendant to pay liquidated damages if at any time the defendant fails to comply with the order); *United States v. Daiso Holding USA, Inc*., No. 4:10-cv-00795 (N.D. Cal. March 4, 2010), Consent Decree for Perm. Inj. & Payment of Civ. Penalty, ECF No. 5 at 5-7, 16, 20 (ordering the defendant to hire a product safety coordinator, establish systems to investigate all reports of consumer incidents, property damage, injuries, warranty claims, insurance claims and court complaints regarding products, maintain records of same, and pay liquidated damages if at any time the defendant fails to comply with material provisions of the decree).

2001); *United States v. Richlyn Lab'ys, Inc.*, 822 F. Supp. 268, 274 (E.D. Pa. 1993); *United States v. Scotty's, Inc.*, 173 F. Supp. 3d 549, 554-557 (E.D. Mich. 2016)).[11]  But Congress's grant of authority to order injunctive relief under the FDCA, 21 U.S.C. § 332(a), is similar to the grant of authority to federal courts in the CPSA.[12]  SunSetter's suggestion that a "regulatory mandate" by the CPSC is necessary before a court can enjoin violations of consumer safety laws is wrong.  The statute that SunSetter violated—a requirement imposed on *all* manufacturers, importers, distributors, and retailers—is straightforward: Manufacturers must immediately report to the CPSC information they obtain that reasonably supports the conclusion that their product contains a defect which would create a substantial product hazard, 15 U.S.C. § 2064(b)(3), or the conclusion that the product creates an unreasonable risk of serious injury or death, 15 U.S.C. § 2064(b)(4).  SunSetter provides no persuasive argument why the Commission would have to adopt detailed regulatory requirements for internal record keeping and reporting in order for this Court to adopt record keeping and reporting requirements as judicial remedies for SunSetter's violations of § 2064(b).[13]

---

[11]     The court in *Scotty's Inc.* found for the United States on liability and ordered it to submit a proposed injunction.  173 F. Supp. 3d at 558.  Thus, the *Scotty's* opinion that SunSetter cites does not include an order for injunctive relief.  *Id.*

[12]     Section 332(a) provides that "[t]he district courts of the United States . . .  shall have jurisdiction, for cause shown [1] to restrain violations of § 331 of this title, except paragraphs (h), (i), and (j)."  21 U.S.C. § 332(a).  In § 331, Congress specifies, in 57 subsections, prohibited acts. 21 U.S.C. § 331(a)-(ggg).

[13]     SunSetter argues that the limitations it reads into this Court's authority to fashion injunctive relief are consistent with *United States v. Toys "R" Us*, 754 F. Supp. 1050, 1058-59, (D.N.J. 1991).  ECF No. 16 at 20.  In *Toys "R" Us*, the court found injunctive relief not warranted primarily because of the defendant's representations that it had enacted a quality control program.  *See* 754 F. Supp. at 1058-61.  Given that the court in that case declined to issue an injunction, *Toys "R" Us* says nothing about the Court's authority to issue an injunction.  The court in *United States v. Zen Magnets, LLC*, 170 F. Supp. 3d 1365 (D. Colo. 2016), another opinion upon which SunSetter relies, ECF No. 16 at 21, concluded that because the CPSA was

SunSetter also argues that the government's request for liquidated damages "deviates" from Congress's grant of authority to order injunctive relief and "seeks to impose a monetary penalty that is not authorized by statute."  ECF No. 16 at 21.  Courts, however, often include liquidated damages in injunctions to deter against future violations, where the statute authorizing the injunction does not foreclose such relief.[14]

SunSetter next argues that government's demand for relief is "unenforceable" because it lacks "definiteness."  ECF No. 16 at 19-20.  SunSetter's argument, however, rests on a misreading of an out-of-circuit opinion in which a court of appeals vacated a cease-and-desist order issued by the FTC as insufficiently specific.  *See* ECF No. 16 at 19-20 (citing *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1236-38 (11th Cir. 2018)).  *LabMD* is neither instructive nor persuasive here.  The *LabMD* court considered that under the relevant FTC regulation, the FTC's complaint must contain "a clear and concise factual statement sufficient to inform each respondent with reasonable definiteness of the type of acts or practices alleged to be in violation of the law," *LabMD*, 894 F.3d at 1235 (citing 16 C.F.R. § 3.11), and ruled that, therefore, "the remedy the complaint seeks must comport with this requirement of reasonable definiteness," *id*.  The

---

enacted to protect public health and safety, the court's equitable jurisdiction under the CPSA assumes an even broader and more flexible character and authorized the injunctive relief that the United States had requested in that case, *see* 170 F. Supp. 3d at 1377-78.

[14]    *See*, *e.g.*, *United States v. Hakim*, 462 F. Supp. 3d 418, 428 (S.D.N.Y. 2020) (ordering that if the defendants in that case fail to comply with any provision of the injunction entered pursuant to the FDCA, they must pay the government one thousand dollars each day and additional liquidated damages twice the retail value of any drugs distributed in violation); *United States v. Super Vape'z*, No. 3:22-cv-05789 (W.D. Wash. Feb. 13, 2023), Consent Decree & Final J., ECF No. 19 at 10 (ordering that if any of the defendants in that case fail to comply with any provision of the injunction entered pursuant to the FDCA, they must pay five thousand dollars in liquidated damages for each day such violation continues and an additional sum of four thousand dollars in liquidated damages per day per violation, for each violation of the consent decree, the FDCA or its implementing regulations, and an additional sum in liquidated damages equal to twice the retail value of any product distributed in violation of the consent decree).

*LabMD* court said nothing, however, about the general sufficiency of pleadings in other civil actions, much less the contents of the demand for relief in a complaint.[15]  The rules governing the administrative adjudication leading to the FTC cease-and-desist order do not apply to civil actions for injunctive relief in district court.  While any injunction issued by the Court must comply with the requirements in Rule 65(d)(1), such requirements do not apply to pleadings.  In sum, given the remedial purpose of the CPSA, the long line of judgments in which courts have ordered various forms of injunctive relief under the CPSA and other remedial statutes, and the absence of contrary instructions from Congress, the CPSA authorizes the form of injunctive relief the United States seeks in the Complaint.

### B.  SunSetter's objections to the relief that the United States requests are premature.

Challenges to the sufficiency of the pleadings are tested by the Rule 8(a)(2) statement of the claim for relief, and the Rule 8(a)(3) demand for judgment is not considered part of the claim for that purpose.  Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1255, n.6 (4th ed.) (collecting cases); *see also Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 806 F. Supp. 2d 503, 507-08 (D.P.R. 2011) (observing that as a general rule, the demand for judgment is not itself a part of the claim and, therefore, failure to specify the relief to which the plaintiff is entitled is not a failure to "state a claim") (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (other citations omitted)).  Dismissal at the pleadings stage is not justified even where a plaintiff has demanded only relief to which it is not entitled.  *Rivera-Almodovar*, 806 F. Supp. 2d at 507.  A court is not limited by the demand for judgment if a deviation seems appropriate at

---

[15]      The other authority that SunSetter relies upon, *Brown v. Board of Trustees*, 891 F.2d 337, 361 (1st Cir. 1989); *see* ECF No. 16 at 20, the disposition of an appeal from a district court's injunction, is unavailing for the same reason.

any point after the interposition of the pleading.  Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1255 (4th ed.).

In *Spectrum Brands*, the defendant manufacturer challenged, in a motion to dismiss, the validity of the United States' request for injunctive relief, *United States v. Spectrum Brands, Inc.*, 218 F. Supp. 3d 794, 822 (W.D. Wis. 2016), as SunSetter does now in its motion to dismiss, ECF No. 16 at 17-22.  The *Spectrum Brands* court observed that, at the pleadings stage, and even at the summary-judgment stage, arguments challenging the validity of the form of injunctive relief that the United States requested were not bases for dismissal where the relief that the United States sought was not so plainly prohibited by law so as to justify dismissal before development of a factual record.  *Spectrum Brands*, 218 F. Supp. 3d at 822-23.

Like the defendant in *Spectrum Brands*, SunSetter's challenge to the injunctive relief sought in this case is premature and not properly brought in a Rule 12(b)(6) motion.  Further, SunSetter has not shown that the relief that the United States seeks is so plainly prohibited by law as to justify dismissal at the pleadings stage and before further development of the facts.

###### C. The United States has pled facts with sufficient specificity to state a claim for injunctive relief in Count III of the Complaint.

A government agency seeking a statutorily authorized injunction need only show that: (1) the statute has been violated; and (2) there is a cognizable danger of recurrent violations.  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *United States v. Dianovin Pharms., Inc.*, 475 F.2d 100, 103 (1st Cir. 1973) (upholding an injunction based on statutory violations and a history of unsuccessful efforts to obtain compliance).  A court assessing the likelihood of future violations may consider "the bona fides of the [defendant's] expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *W.T. Grant Co.*, 345 U.S. at 633.  "[P]ast misconduct does not lead necessarily to the conclusion

that there is a likelihood of future misconduct," but "it is 'highly suggestive of the likelihood of future violations.'" *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)); *Zen Magnets*, 104 F. Supp. 3d at 1281 (observing same).  A court weighing past violations should "look at the 'totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.'" *Hunt*, 591 F.2d at 1220 (quoting *Mgmt. Dynamics*, 515 F.2d at 807).

The United States' Complaint satisfies this pleading standard.  SunSetter does not contest the first prong of the two-part test: that the United States has sufficiently pled that SunSetter violated the CPSA.  SunSetter seeks dismissal of Count III, in which the United States seeks injunctive relief based on the likelihood of future violations.  ECF No. 16 at 22-25.  The United States sets forth a detailed recitation of allegations that describe a *five-and-one-half-year delay* in providing the CPSC information that SunSetter should have provided to the CPSC immediately. ECF No. 1 ¶¶ 30-41.  SunSetter does not contest that the United States has adequately pled the facts needed to support Counts I and II, which are based on these lengthy violations of § 2068(a)(4).  The circumstances of SunSetter's violations include its accumulation of reports about fourteen consumer incidents, including one fatality, and the results of its own testing more than two years before reporting to the CPSC.  *Id.* ¶¶ 35, 42, 43.  Notably, the consumers who reported incidents known to SunSetter describe its awning opening unexpectedly, suddenly, and with such force that it can knock over anyone in its path—particularly dangerous where the individual removing the Cover is likely to be on a ladder.  SunSetter's failure to report until after receiving notification of the death of a consumer makes it plausible (at the very least) that

SunSetter has not implemented and maintained a reasonable and effective program or system for compliance.

SunSetter argues that the United States has not alleged sufficient facts because it has not specified the "characteristic[s]" of a reasonable and effective program or system for complying with the reporting requirements of the CPSA, and contends that its current system is "working." ECF No. 16 at 23-24.  But the allegation that SunSetter only reported to the CPSC after it learned of the death of a consumer—despite being aware of at least thirteen other consumer incidents in the previous five and a half years—reasonably supports the allegation that SunSetter has *not* implemented a reasonable and effective program for complying with the reporting requirements in § 2064(b).  Likewise, SunSetter's recall of the product in 2019, seven years after it became aware of a product defect, does not show that the company has implemented a reasonable and effective program or system for complying with the reporting requirements in § 2064(b).

SunSetter's suggestion that the reporting incidence (fourteen out of approximately 270,000 awnings sold) compared to that in *Spectrum Brands* (1,600 complaints) weighs against a finding of a likelihood of future violations, ECF No. 16 at 24-25, also is unavailing. Manufacturers are required to report information they receive about potential hazards in consumer products because they are in the best position to know such information.[16]  ECF No. 1 ¶ 1.  The United States alleges that SunSetter delayed reporting for years—an allegation that must, in a motion to dismiss under Rule 12(b)(6), be taken as true.  How SunSetter's delay in reporting compares to delays in reporting in other cases is irrelevant to a determination of whether the United States has adequately pled its claims here.

---

[16]     SunSetter also omits any mention of the seriousness of the injuries at which it put consumers at risk, *see* ECF No. 1 ¶¶ 30-35, 38, 40, 41, 43, while it did not report to the CPSC.

Finally, SunSetter argues that the United States has failed to meet the pleading standard because it relies "upon information and belief" that SunSetter has not implemented and maintained a reasonable and effective program or system for complying with the reporting requirements of the CPSA and related regulations.  ECF No. 16 at 23, 25.  The *Twombly* plausibility standard for determining whether pleadings are sufficient to state a claim does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on information that makes the inference of culpability plausible.  *Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*, 347 F. Supp. 3d 61, n.1 (D. Mass. 2018) (citing *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44-45 (1st Cir. 2012) (noting that "some latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where . . . some of the information needed may be in control of [the] defendants") (quotation marks and citation omitted)); *see Primerica Life Ins.*, 2021 WL 927462, at *4 (denying Rule 12(b)(6) motion to dismiss crossclaim where cross-claimants pled based on information and belief and the facts pled were in the control of the respondent).  Information regarding SunSetter's system or program, if one exists, for complying with the reporting requirement in 15 U.S.C. § 2064(b) is within SunSetter's control and will be sought in discovery.  Further, the specific facts alleged by the United States make an inference of culpability plausible and support a finding that SunSetter's violation of § 2068(a)(4) has a reasonable likelihood of recurrence.

## CONCLUSION

SunSetter has not shown any deficiency on the face of the Complaint so as to warrant dismissal.  For the forgoing reasons, the Court should deny SunSetter's motion to dismiss.

Dated: July 18, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director
Consumer Protection Branch

s/ *Christina Parascandola*
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
NICOLE FRAZER
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch
450 5th Street, NW
Sixth Floor, South
Washington, DC 20001
(202) 514-3097
Fax: (202) 514-8742
christina.parascandola@usdoj.gov

JOSHUA S. LEVY
Acting United States Attorney

s/ *Anuj K. Khetarpal*
ANUJ K. KHETARPAL
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3658
anuj.khetarpal@usdoj.gov

OF COUNSEL:

AUSTIN C. SCHLICK
General Counsel
MELISSA V. HAMPSHIRE
Assistant General Counsel
HARRIET KERWIN
Attorney
RENEE H. MCCUNE
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, MD 20814
AMELIA D. HAIRSTON-PORTER
Attorney
Office of Compliance and Field Operations
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

**CERTIFICATE OF SERVICE**

I, Christina Parascandola, hereby certify that the foregoing document filed through the

ECF system will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing and paper copies will be sent to those indicated as non-registered participants

via First Class Mail.


Dated: July 18, 2023                    */s/ Christina Parascandola*
                                        Christina Parascandola