UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 23-cv-10744-ADB |
| | * | |
| SUNSETTER PRODUCTS LP, | * | |
| a Massachusetts Limited Partnership | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The United States of America ("Plaintiff") brings this action against SunSetter Products, LP ("SunSetter" or "Defendant"), related to Defendant's alleged failure to report incidents related to its protective vinyl covers for its awnings to the Consumer Product Safety Commission ("CPSC") and its failure to maintain a system for reporting such incidents. [ECF No. 1 ("Complaint" or "Compl.")]. Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 15]. For the reasons set forth below, the motion is DENIED.

I.     BACKGROUND

    A.     Factual Background

The following facts are taken from the Complaint, the factual allegations of which are assumed to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A.,

766 F.3d 87, 90 (1st Cir. 2014).

Defendant manufactures and sells retractable awnings for outdoor use that can be controlled by a separate, remote-control device, as well as a protective cover ("the Cover") which protects the retracted awning from the elements. [Compl. ¶¶ 2–3]. Defendant sold or gave the Covers to consumers and directed them to secure the Cover with provided bungee-tie downs. [Id.]. Typically, a consumer must stand on a ladder or stool to install or remove the Cover. [Id.].

From June 1999 through January 2019, Defendant manufactured and sold approximately 270,000 Covers to consumers and retailers. [Compl. ¶¶ 27–28]. Between 2012 and July 2015, there were multiple incidents in which awnings opened unexpectedly after the Cover was removed. In 2012, three consumers notified Defendant that its awnings had opened suddenly and unexpectedly after the Cover was removed; one of these three consumers reported that he was knocked from a ladder. [Id. ¶ 30]. Defendant's senior management was notified of these reports. [Id.]. In early 2013 Defendant advised a customer who reported that her awning opened unexpectedly to manually roll up the awning and to unplug it before removing the Cover. [Id. ¶ 31]. As of May 2013, Defendant's senior management was aware of a report of a second consumer being knocked off a ladder when removing the Cover from the awning. [Id. ¶ 32]. In that incident, the consumer suffered a broken arm, a broken leg, and required stitches. [Id.]. Finally, between July 2014 and July 2015, Defendant received reports of two additional instances of awnings opening unexpectedly when the Cover was being removed. [Id. ¶¶ 33–34].

In August 2015, Defendant tested its awnings to try to recreate the incident reported in July 2015. [Compl. ¶ 35]. It determined that the awnings could open suddenly and unexpectedly when the Cover is installed, the awning is plugged in, the remote control is activated, and the

Cover is removed. [Id.]. Defendant "updated the installation and use instructions for the Covers and sent the updated instructions to approximately 305,000 existing consumers." [Id. ¶ 36]. The updated instructions included the following text: "WARNING: Do not place the ladder or stand in front of the [awning]. Doing so could result in personal injury." [Id.]. Following the update to the awning use instructions, Defendant mailed a Safety Notice to its customers acknowledging the danger posed by the awnings. [Id. ¶ 37]. Defendant did not notify the CPSC of the Safety Notice. [Id.].

Between 2015 and August 2017, Defendant received five additional consumer reports of awnings that opened unexpectedly, including two that resulted in injuries. [Compl. ¶¶ 38–40]. Defendant updated the installation and use instructions for its awnings again in March 2016. [Id. ¶ 39]. In September 2017, Defendant was notified of a lawsuit filed by the family of a person who died from injuries sustained when an awning opened unexpectedly when the Cover was removed, knocking the customer from a ladder and off a balcony. [Id. ¶ 41].

On October 16, 2017, Defendant submitted a report regarding the Covers to the CPSC. [Compl. ¶ 42]. Prior to the October 2017 report, Defendant had not informed the CPSC about any of the incidents or injuries caused by removing the Covers. [Id. ¶ 44].

"On August 13, 2019, [Defendant] and the CPSC issued a joint press release announcing a recall of the Covers and telling Cover owners to not install Covers or remove any installed Covers until they received instructions from [Defendant]." [Compl. ¶ 45]. Plaintiff alleges, "[u]pon information and belief, [that] [Defendant] has not implemented and maintained a reasonable and effective program or system for complying with the reporting requirements of the CPSA and related regulations." [Id. ¶ 46].

B.      **Procedural History**

Plaintiff filed its Complaint on April 6, 2023, raising claims that Defendant violated 15 U.S.C. §§ 2068(a)(4) and 2069 by: (1) knowingly failing to immediately inform the CPSC that the Covers "could create a substantial product hazard, (i.e., a defect that could create a substantial risk of injury to the public) as required by 15 U.S.C. §§ 2064(a)(2) and (b)(3)" (Count I); (2) knowingly failing to inform the CPSC that the Covers created "an unreasonable risk of serious injury or death, as required by 15 U.S.C. § 2064(b)(4)" (Count II); and (3) seeking injunctive relief pursuant to 15 U.S.C. § 2071(a)(1) based on Defendant's failure to "implement[] and maintain[] a reasonable and effective program or system for compliance," following its "repeated, years-long failures to furnish information required under 15 U.S.C. § 2064(b)(3) and [(b)](4) . . . in violation of 15 U.S.C. § 2068(a)(4)" (Count III).  [Compl. ¶¶ 49–53].

Defendant moved to dismiss the Complaint on June 6, 2023, [ECF No. 15], Plaintiff opposed the motion on July 18, 2023, [ECF No. 26], and Defendant filed a reply in further support of its motion on August 17, 2023, [ECF No. 29].

**II.     LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.  "To cross the plausibility threshold a claim does not need to be probable, but it

must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION

#### A. Separation of Powers

Defendant argues that this action should be dismissed as the suit "subjects [Defendant] to unconstitutional enforcement proceedings" because the Consumer Product Safety Act ("CPSA") restricts the President's power to remove CPSC's Commissioners at will. [ECF No. 16 at 11–17]. The CPSA restricts the President's power to remove CPSC commissioners except "for neglect of duty or malfeasance in office." 15 U.S.C. § 2053(a). Defendant asserts that these for-cause removal restrictions violate the separation of powers and that the CPSC therefore "initiated this proceeding . . . without constitutionally mandated Presidential supervision." [Id.]. Plaintiff responds that the constitutional prohibition on for-cause removal provisions does not apply to a multi-member body like the CPSC, and so the CPSA and these proceedings are not unconstitutional. [ECF No. 26 at 15–19].

"'Since 1789,' . . . 'the Constitution has been understood to empower the President to keep [executive] officers accountable—by removing them from office, if necessary.'" Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2198 (2020) (quoting Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 483 (2010)). That said, the Supreme Court has also long-recognized that "the Constitution [does] not give the President 'illimitable power of removal' over the officers of independent agencies." Morrison v. Olson, 487 U.S. 654, 687 (1988) (quoting Humphrey's Ex'r v. United States, 295 U.S. 602, 631 (1935)). Defendant argues that Seila Law, which invalidated for-cause removal restrictions as they apply to the Consumer Financial Protection Bureau ("CFPB"), 140 S. Ct. at 2201, should be extended to apply in this

case, see [ECF No. 16 at 6]. Plaintiff replies that the for-cause removal restrictions in the CPSA fall under the Humphrey's Executor exception to the President's removal power because this exception allows for-cause removal restrictions for "expert agencies led by a group of principal officers." [ECF No. 26 at 15–19]; Seila Law, 140 S. Ct. at 2191 (summarizing Humphrey's Ex'r). Plaintiff contends that Seila Law did not alter this exception. [ECF No. 26 at 17–19].

In Seila Law, the Court concluded that the CFPB's "leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers," while also recognizing (and distinguishing) several exceptions to the President's removal power, including, Humphrey's Executor. 140 S. Ct. at 2198–200. As the Seila Law Court described it, "the [Humphrey's Executor] Court stressed that Congress's ability to impose . . . [for-cause] removal restrictions 'will depend upon the character of the office,'" and explained the Humphrey's Executor holding as "permitt[ing] Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." Id. at 2199 (quoting Humphrey's Ex'r, 295 U.S. at 631). Although seemingly skeptical of the conclusion in Humphrey's Executor that the 1935 Federal Trade Commission ("FTC") did not exercise executive power, see, e.g., id. at 2198 ("Rightly or wrongly, the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'"), the Seila Law Court also expressly stated it was not "revisit[ing] Humphrey's Executor or any other precedent," id. at 2206.

Defendant argues here that, like the CFPB, the Humphrey's Executor exception "does not apply [to the CPSC] because the Commissioners exercise 'substantial executive power' without meaningful supervision." [ECF No. 16 at 13]. In Consumers' Research v. Consumer Product

6

Safety Commission, addressing the same argument, the Fifth Circuit recently held that the defendant was reading Seila Law too broadly. 91 F.4th 342, 352 (5th Cir. 2024). Although the Fifth Circuit concluded that "the borders of the . . . 'Humphrey's Executor exception,'" are not altogether clear, id. (quoting Seila Law, 140 S. Ct. at 2198), it explained that "the Supreme Court has not . . . limited that decision to the FTC alone" and it seems to continue to apply to "any 'traditional independent agency headed by a multimember board,'" id. (first quoting Seila Law, 140 S. Ct. at 2193; and then citing id. at 2211 (Roberts, C.J.) (stating that Congress may 'remedy' a constitutionally 'defect[ive]' single-member agency by 'converting [it] into a multimember agency')). The Fifth Circuit found that regardless of whether the CPSC wields "substantial executive power" (which the Fifth Circuit concluded it does), the CPSC is "in every other respect . . . structurally identical to the agency that the Supreme Court deemed constitutional in Humphrey's." Id. at 346. Specifically:

> Congress created the [CPSC] to "protect the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2053(a). The Commission has five members, each of whom the President must appoint and the Senate must confirm. Id. The members serve staggered, seven-year terms. No more than three of them can "be affiliated with the same political party." Id. § 2053(c). Structurally, these features make the commission a mirror image of the Federal Trade Commission (FTC) . . . .

Consumers' Rsch., 91 F.4th at 346.

Because the Seila Law Court stated expressly it was not "revisit[ing] Humphrey's Executor," 140 S. Ct. at 2206, and "the [CPSC] fits squarely within . . . '[Humphrey's] recognized exception for independent agencies' whose leadership consists of a 'multi-member bod[y] of experts,'" Consumers' Rsch., 91 F.4th at 346 (quoting Collins v. Mnuchin, 938 F.3d 553, 587–88 (5th Cir. 2019)), the Fifth Circuit concluded that the CPSA's for-cause removal provisions do not violate the separation of powers. The Court agrees. The CPSC and the 1935

FTC share the same "organizational features that helped explain [the Humphrey's Executor Court's] characterization of the FTC as non-executive," Consumers' Rsch., 91 F.4th at 352 (quoting Seila Law, 140 S. Ct. at 2193), and Humphrey's Executor continues to apply to "any 'traditional independent agency headed by a multimember board,'" id. (quoting Seila Law, 140 S. Ct. at 2193), like the CPSC.  The Court therefore finds that the CPSA's for-cause removal provisions are constitutional and Defendant's motion to dismiss on this ground is DENIED.

    **B.**    **Count III: Injunctive Relief**

Defendant also argues that Count III, which seeks injunctive relief pursuant to Section 2071(a)(1) of the CPSA, fails to state a claim because Plaintiff's requested injunctive relief "exceeds the Court's limited statutory injunction authority under the CPSA," and further, that "the lack of definiteness in the CPSC's proposed injunction makes it unenforceable."  [ECF No. 16 at 17, 19].  Alternatively, Defendant argues that even assuming "the Court had the statutory authority to grant the type of injunction the CPSC is seeking," Plaintiff has failed to adequately plead a likelihood of future violations.  [Id. at 22].

Plaintiff responds that Defendant's objections to the specific forms of injunctive relief it has requested are premature, given that (1) Rule 12(b)(6) "[c]hallenges to the sufficiency of the pleadings are tested by the Rule 8(a)(2) statement of the claim for relief, and the Rule 8(a)(3) demand for judgment is not considered part of the claim or that purpose[,]" and (2) Plaintiff's requested relief is not "plainly prohibited by law."  [ECF No. 26 at 28–29].  Plaintiff also argues that even if these objections are not premature, "[t]he CPSA's injunctive provisions[, including Section 2071(a)(1), which provide courts the authority to "restrain any violation of [15 U.S.C. § 2068],"] are broadly worded . . . and should be construed accordingly."  [Id. at 20]. Additionally, according to Plaintiff, Defendant's argument as to definitiveness rests on a

8

misreading of irrelevant out-of-circuit caselaw and although any "any injunction issued by the Court must comply with the requirements in Rule 65(d)(1), such requirements do not apply to pleadings." [Id. at 28]. Finally, Plaintiff urges that its pleadings are sufficient under the permissive plausibility standard. [Id.].

Section 2071(a)(1) provides that district courts have jurisdiction to "[r]estrain any violation of section 2068," 15 U.S.C. § 2071(a)(1), which includes a failure "to furnish information required by section 2064(b)," id. § 2068(a)(4). In Count III, Plaintiff seeks "injunctive relief," pursuant to Section 2071(a)(1), based on "[Defendant's] repeated, years-long failures to furnish information required under 15 U.S.C. § 2064(b)(3) and (4) . . . , in violation of 15 U.S.C. § 2068(a)(4), and . . . [for Defendant's failure to] . . . implement[] and maintain[] a reasonable and effective program or system for compliance." [Compl. ¶ 53]. Further, as relevant to Count III, in its "Requested Relief," the Complaint requests that the Court:

> Award Plaintiff injunctive relief against SunSetter . . . , in accordance with 15 U.S.C. § 2071(a)(1), that would: (1) require SunSetter to comply with the reporting requirements of the CPSA and its accompanying regulations; (2) assure such future compliance by requiring SunSetter to establish internal recordkeeping and monitoring systems designed to provide timely reports to the CPSC whenever SunSetter obtains information which reasonably supports the conclusion that any of its products contains a defect which could create a substantial product hazard or creates an unreasonable risk of serious injury or death to consumers; (3) appoint a third-party monitor to ensure that SunSetter complies with all information-reporting requirements under the CPSA and its accompanying regulations; (4) provide for liquidated damages that become immediately due and payable in the event that SunSetter fails to comply with the reporting requirements of the CPSA; and (5) require SunSetter to establish escrow accounts containing funds that could be used to pay any liquidated damages imposed by the Court.

[Compl. at 11–12].

Defendant does not argue that the Court has no authority to order injunctive relief pursuant to the CPSA. In fact, as noted above, Defendant states that the Court does have "limited statutory injunction authority." [ECF No. 16 at 17]. Instead, Defendant takes issue with

the fact that Plaintiff "has not asked to restrain some specific conduct with respect to [its] obligation to report under § 2064(b)." [Id. at 18]. Defendant also asserts that the Court lacks statutory authority to grant all but one of Plaintiff's requested forms of injunctive relief, namely (2)–(5) listed above, and that the fifth form of injunctive relief Plaintiff requests, "(1) requir[ing] SunSetter to comply with the reporting requirements of the CPSA and its accompanying regulations," is tantamount to an "unenforceable 'obey-the-law' injunction." [Id. at 17–22].

Rule 8(a) provides that "[a] pleading that states a claim for relief must contain:"

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). However, "'[t]he sufficiency of a pleading [for purposes of a 12(b)(6) motion] is tested by the Rule 8(a)(2) statement of the claim for relief,' not the demand for relief sought under Rule 8(a)(3)." De La Madrid-Perez v. Rosado-Rodriguez, No. 22-cv-01438, 2023 WL 8238955, at *4 (D.P.R. Nov. 28, 2023) (quoting 5 Charles Alan Wright et al., Federal Practice and Procedure § 1255 (4th ed. Apr. 2023 update)). "The demand for judgment is not considered part of the *claim* for that purpose, as numerous cases have held." Id. (quoting 5 Charles Alan Wright et al., Federal Practice and Procedure § 1255 (4th ed. Apr. 2023 update)). The issue on a Rule 12(b)(6) motion to dismiss is "whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded." LaBonte v. Riverside Park Enters., Inc., No. 22-cv-30046, 2022 WL 17253663, at *5 (D. Mass. Nov. 28, 2022) (quoting Johnson v. Rapid Sheet Metal, LLC, 560 F. Supp. 3d 623, 629 (D.N.H. 2020)). As such, the Court finds that so long as Plaintiff is entitled to any injunctive relief, whether the

Court has the authority to grant the particular forms of relief requested, dismissal of Count III is not required.

In reply, Defendant states that its understanding of the authority provided under the CPSA to grant statutory relief does not "deprive[] a court of the ability to address specific conduct that gives rise to a violation," [ECF No. 29 at 16], and specifically that "[w]ith respect to Section 2064 reporting, if a court were to determine that, under the circumstances presented, a specific category of future incidents would be reportable as a matter of law under Section 2064, it may be reasonable for the court to order a firm to, for example, report any such incidents for some period of time," [id.].  The Court agrees that nothing in the plain language of Section 2071(a)(1)—which, as noted above, provides courts authority to "restrain any violation of section 2068," which, in turn, includes a failure "to furnish information required by section 2064(b)"—and nothing in either the structure of Section 2071(a)(1) or the CPSA more generally limits the Court's authority to grant such an injunction.  See AMG Cap. Mgmt., LLC v. FTC, 593 U.S. 67, 79 (2021) ("[T]he scope of equitable relief that a provision authorizes 'remains a question of interpretation in each case.'" (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 257 (1993))); cf. id. at 75 ("[t]he language and structure of § 13(b) [of the FTC Act], taken as a whole, indicate that the words 'permanent injunction' have a limited purpose—a purpose that does not extend to the grant of monetary relief."); see also United States v. Spectrum Brands, Inc., 218 F. Supp. 3d 794, 824 (W.D. Wis. 2016) ("[T]he CPSC would arguably be authorized to 'restrain any violation' of the CPSA by seeking to enjoin certain conduct for a certain period of time, if the CPSC could show to a sufficient degree of likelihood that a violation may occur absent the injunction, even if the conduct was not necessarily occurring at the moment the injunction was entered."), aff'd, 924 F.3d 337 (7th Cir. 2019).  Likewise, an injunction similar to

that proposed by Defendant would seem to address conduct like Defendant's alleged violations, namely that Defendant has failed to report allegedly reportable incidents and such violations are likely to continue into the future.  Leaving aside whether Plaintiff has adequately pleaded a likelihood of future violations (further discussed below), the Court finds that Plaintiff has otherwise plausibly alleged entitlement to some form of injunctive relief and therefore dismissal of Count III is not warranted on this ground.

The Court also finds that Plaintiff has sufficiently alleged a "reasonable likelihood of future violations" without injunctive relief, [ECF No. 16 at 22 (quoting United States v. Toys "R" Us, Inc., 754 F. Supp 1050, 1058–59 (D.N.J. 1991))].  To *issue* a statutory injunction, the Court must "determin[e] . . . that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive[,]" upon "consider[ing] . . . the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."  United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953) (emphasis added); see also SEC v. Lemelson, 57 F.4th 17, 30 (1st Cir.) (explaining in the context of an SEC enforcement action, that "[t]he legal standard for issuance of the injunction is a 'reasonable likelihood of recidivism,' which is assessed by looking at 'several factors, none of which is determinative'" (quoting SEC v. Sargent, 329 F.3d 34, 39 (1st Cir. 2003))), cert. denied sub nom. Lemelson v. SEC, 144 S. Ct. 486 (2023).

That said, the federal notice pleading standard does not require detailed factual allegations.  Rather, the allegations must give the defendant fair notice of the basis of the claim and "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  The Complaint alleges that (1) beginning in 2013, Defendant was aware of incidents of Covers malfunctioning and causing bodily injury and, in one case, death; (2) Defendant did not report

any of these until October 2017, one month after it learned of the incident that resulted in a fatality; (3) Defendant did not recall the Covers until 2019; and (4) on information and belief, Defendant has failed to establish a system to ensure that future issues are reported.[1] At this early stage of the litigation, these allegations are sufficient to establish a "reasonable likelihood of future violations." Toys "R" Us, Inc., 754 F. Supp. at 1058–59.

Defendant's motion to dismiss Count III is therefore DENIED.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss, [ECF No. 15], is DENIED.

**SO ORDERED.**

March 14, 2024                                          /s/ Allison D. Burroughs
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE

---

[1] "Pleading 'upon information and belief' is not fatal under Twombly." Aspen Tech., Inc. v. Walter, No. 19-cv-11292, 2019 WL 4795551, at *4 (D. Mass. Sept. 12, 2019).

> The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' (1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible.

Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). The Court finds that both elements are satisfied here: the information relating to the existence of a reporting system is "peculiarly within the possession and control of" Defendant and Plaintiff's other allegations make the lack of such a system plausible.